UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

NOVAL WILLIAMS FILMS LLC,

                *Plaintiff*,

  -against-

JOHN BRANCA and JOHN McCLAIN,
EXECUTORS OF THE ESTATE OF
MICHAEL J. JACKSON,

                *Defendants*.

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 3, 2015

14 Civ. 4711 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

    Plaintiff Noval Williams Films LLC ("Noval" or "Plaintiff") seeks a declaratory judgment against Defendants John Branca and John McClain, the executors of the Estate of Michael J. Jackson (collectively, "Defendants" or "Executors") that it has not infringed any copyrights of certain audiovisual material and photographs used in its documentary film "Michael: The Last Photo Shoots."  Defendants move pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the claim for lack of personal jurisdiction over Defendants, or in the alternative to transfer the suit to the Central District of California.  Defendants also move to disqualify Plaintiff's attorney, Raymond J. Markovich.  The motion to dismiss or transfer is denied, and the motion to disqualify Plaintiff's counsel is granted.

1

## BACKGROUND[1]

In 2007, Michael Jackson ("Jackson") appeared in two photo shoots, one for Vogue magazine and one for Ebony magazine, in New York City. Compl. ¶ 14. Jackson authorized Ambassadors Media, Marketing & Management Group/ H. Hasaun Muhammad ("Muhammad") to videotape these photo shoots, resulting in the disputed footage. *Id.* ¶ 15. Muhammad owned the copyright in the footage until May 21, 2013, and released a small amount of the footage commercially in November 2007. *Id.*¶¶ 16-17. Jackson died on June 25, 2009. *Id.* ¶ 18.

On July 29, 2011, Muhammad, while in New York, offered to sell the footage to Defendants through their representative, Karen Langford. *Id.* ¶¶ 19-20. Langford had one or more meetings with Mohammad in New York concerning the potential acquisition by Defendants of the footage. *Id.* ¶ 21. Langford spoke by phone with Muhammad several times. *Id.* ¶ 22. Defendants, either themselves or through Langford, viewed the footage at the Waldorf Astoria in New York. *Id.* ¶ 23. From February 2011 through January 2012, Defendants, themselves and through Langford, repeatedly corresponded with Muhammad in New York concerning the potential acquisition. *Id.* ¶ 24. Defendants ultimately did not purchase or license the footage, and did not assert an ownership interest in the footage. *Id.* ¶ 25.

Defendants served as executive producer, and own and control the copyright, for the film "This Is It" starring Jackson that was initially released, licensed, and sold in New York on October 28, 2009, and is still being licensed or sold in New York. *Id.* ¶¶ 26-27. Defendants transacted business in New York through this film and derived significant revenue from the film. *Id.* ¶¶ 28-31. Defendants also executive produced, own, and control the copyright for the film

---

[1] At this stage in the litigation, the Court takes as true the allegations in Plaintiff's complaint and considers affidavits submitted by the parties in the light most favorable to Plaintiff. *See Rankel v. Kabateck*, 2013 WL 7161687, at *1 (S.D.N.Y. Dec. 9, 2013) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).

"Bad 25" starring Jackson that was initially released, licensed, and sold in New York on or about October 19, 2012.  *Id.* ¶ 32.  The director and production company for Bad 25 are both located in New York, and Defendants transacted business in New York for the purposes of this film and derived significant revenue from the film's release and sale in New York.  *Id.* ¶¶ 34-38.  Defendants also own a significant stake of Sony/ATV Music Publishing LLC, located in New York.  *Id.* ¶ 39.  Defendants have been involved in two lawsuits in the Southern District of New York recently and neither of these cases were dismissed for lack of personal jurisdiction.  *Id.* ¶ 43.

On May 21, 2013, after Craig J. Williams ("Williams") reviewed the chain of title for the footage and became aware that Defendants had chosen not to purchase the footage from Muhammad, Williams received an assignment of all right, title, and interest in the footage from Muhammad.  *Id.* ¶ 44.  On October 15, 2013, after Bonaventura Films LLC reviewed the same chain of title, Williams assigned the same right, title, and interest in the footage to Bonaventura, of which Williams is an owner.  *Id.* ¶ 45; Williams Aff. ¶ 3.  Williams is also a 50% owner of Plaintiff; the other 50% membership interest is owned by Victorino Noval Productions, LLC, which is managed by Markovich.  Williams Aff. ¶¶ 3-4.  On November 1, 2013, after Noval's own investigation of the chain of title of the footage, Bonaventura granted to Noval an Exclusive Single Picture License "for use and exploitation in perpetuity throughout the universe" of the footage.  Compl. ¶ 46.

Noval created a "newsworthy, historical, transformative and copyrighted documentary film entitled 'Michael: The Last Photo Shoots,'" using the footage.  *Id.* ¶ 6.  The documentary also includes photos owned by Globe-Photos, Inc. and Ace Photos, Inc., and licensed to Plaintiff by AudioMicro, Inc.  *Id.* ¶¶ 10-12.  AudioMicro is located in California, while Globe Photos and

Ace Photos are located in New York. *Id.*; Rosenberg Decl. Ex. 3. Defendants contend that the film also contains photographs owned by the Estate which were shot in California. Compl. Ex. H; Def. PJ Mem. at 4.

On February 10, 2014, Noval executed a Sales Agency Agreement with Lightning Entertainment, and subsequently redirected any offers, correspondence, or inquiries regarding the documentary to Lightning. Compl. ¶ 47. Before the execution of the agreement with Lightning, Noval had been offered a deal for certain license rights for television in Brazil. *Id.* On May 19, 2014, Defendants sent Lightning and Craig Williams a letter suggesting that they had rights in the footage and photographs used in the documentary. *Id.* ¶ 48. Lightning informed Noval that if Noval filed a claim against Defendants, Noval would breach its agreement with Lightning. *Id.* ¶ 49. After Plaintiff responded, informing Defendants that it had legally acquired the footage and photographs, Defendants claimed that there had been a breach of an agreement with Jackson. *Id.* ¶¶ 50-51. On June 12, 2014, Lightning provided Defendants with a viewable copy of the film without Plaintiff's authorization, and Defendants then claimed ownership or co-ownership of the copyright in the photographs, and breach of an agreement with respect to the footage. Defendants demanded that Noval cease and desist from exploitation of the photos and footage. *Id.* ¶ 52-53. The deal with Brazil was canceled by the counterparty on June 19, 2014. *Id.* ¶ 54.

Plaintiff alleges that its claim arises out of Jackson's and Defendants' economic activities in New York, and that almost all potential witnesses reside in New York or nearby. *Id.* ¶¶ 57-61. Plaintiff seeks a declaration[2] that it has not infringed any copyrights concerning the photos or

---

[2] Plaintiff's Complaint refers repeatedly to "18 U.S.C. § 2201" and "18 U.S.C. § 2202." Compl. ¶¶ 6, 70, pp. 11, 13. The Declaratory Judgment Act is codified at 28 U.S.C. § 2201.

footage and that Defendants have no valid claims for breach of an alleged agreement, inducement of breach, or tortious interference with respect to the footage.  *Id.* ¶ 70.

## DISCUSSION

I.     **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)**

   A.  **Applicable Law**

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) will be granted where the Court lacks personal jurisdiction over the moving party.  It is the plaintiff's burden to establish jurisdiction, *see In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013), but a plaintiff may overcome such a motion by making a *prima facie* showing of jurisdiction based on legally sufficient allegations of jurisdiction, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 83-85 (2d Cir. 2013).  New York law, applicable here, provides for personal jurisdiction over out-of-state defendants based on general jurisdiction under C.P.L.R. § 301 or long-arm jurisdiction under C.P.L.R. § 302.

The exercise of general jurisdiction over an out-of-state defendant is appropriate where there is "a continuous and systematic course of doing business in New York that warrants a finding of defendants' presence in the state."  *Universal Trading & Inv. Co. v. Credit Suisse (Guernsey) Ltd.*, 560 F. App'x 52, 55 (2d Cir. 2014) (internal quotation marks and alterations omitted) (citing *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (1982)).  "'[F]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'"  *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)).

Under New York's long-arm statute, the Court may exercise personal jurisdiction "'over any non-domiciliary, [or his executor] . . . who in person or through an agent . . . transacts any business within the state,' so long as the plaintiff's 'cause of action aris[es] from' that 'transact[ion].'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60 (2d Cir. 2012) (alterations in original) (quoting N.Y. C.P.L.R. § 302(a)).  Once the Court's exercise of personal jurisdiction is deemed appropriate according to New York law, "the second step is an evaluation of whether the Court's exercise of personal jurisdiction comports with the Due Process Clause of the United States Constitution." *Ikeda v. J. Sisters 57, Inc.*, 2015 WL 4096255, at *3 (S.D.N.Y. July 6, 2015) (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010)).

### B. Analysis

General jurisdiction under C.P.L.R. § 301 is inappropriate here.  General jurisdiction over Defendants is proper, according to Plaintiff, because Defendants own a significant stake in Sony in New York; Defendants served as executive producers of two films released, licensed and/or sold in New York and derive substantial revenue from New York because of these films; Defendants have been involved in other lawsuits in the Southern District of New York; and Defendants are otherwise involved in New York through the film business.  Pl. PJ Mem. at 15-17.  None of these assertions provide sufficient allegations of jurisdiction.

First, Defendants have no offices, bank accounts, or employees in New York.  Branca Decl. ¶ 6. With respect to their involvement with Sony, Plaintiff has not demonstrated a relationship between Defendants and Sony sufficient to find jurisdiction over Defendants through Sony's presence in New York.  "In order to plead adequately that one entity is the alter ego of another for jurisdictional purposes, the plaintiff must plead that the allegedly controlled

entity was a shell for the allegedly controlling party." *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 66 F. Supp. 3d 385, 392 (S.D.N.Y. 2014) (citation and internal quotation marks omitted) (also noting that *Daimler*, 134 S. Ct. at 759, called into question both the agency theory and the "mere department" theory of personal jurisdiction). Beyond alleging Defendants' ownership stake in Sony, Plaintiff has failed to demonstrate how this ownership stake provides the Court with jurisdiction over Defendants under any theory.

Next, Defendants' production and sale of a film in New York do not establish a corporate presence in New York. A non-resident "is amenable to suit in New York if it has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *In re M/V MSC Flaminia*, 2015 WL 1849714, at *2 (S.D.N.Y. Apr. 22, 2015) (citation, internal quotation marks, and alterations omitted). That Defendants' films are sold in New York does not rise to this level. Finally, Defendants' involvement in separate litigation in the Southern District of New York does not provide the Court with general jurisdiction over Defendants, particularly where no court has specifically ruled that there is general jurisdiction over Defendants in this district.

Nonetheless, Plaintiff has demonstrated specific jurisdiction over Defendants. The Court must assume Plaintiff's allegations regarding Jackson's agreement with Muhammad are true. Thus, Plaintiff has alleged that Jackson entered into some form of transaction or agreement in New York with Muhammad such that Muhammad could obtain the footage of Jackson. Compl. ¶¶ 14-15. Defendants argue that this argument fails because Plaintiff alleges that Jackson agreed to allow Mohammad to film him gratuitously with no control or involvement of Jackson, and thus Plaintiff has alleged no business transaction. Def. PJ Mem. at 7-8; Def. PJ Reply at 3. But Plaintiff has alleged that Jackson and Mohammad had an agreement regarding the footage, and at

this stage the Court cannot make a merits determination regarding the details of the transaction. Moreover, "[t]he statute's reference to 'business' is read broadly as 'purposeful activities,' without any limitation to commercial transactions." *Perez v. Reno*, 2000 WL 686369, at *3 (S.D.N.Y. May 25, 2000) (citation omitted). Plaintiff's claims relate largely to Mohammad's rights to the footage and the substance of that transaction. And New York's long-arm statute is a "single act" statute; accordingly, this one transaction in New York relating to the claims at issue suffices for the exercise of specific jurisdiction. *See Licci*, 673 F.3d at 62 ("A single act within New York will, in the proper case, satisfy the requirements of section 302(a)(1)."). Here, where Jackson was voluntarily present in New York and engaged in some sort of transaction in New York, and where the claim at issue relates to the transaction in New York, the long-arm statute provides the Court with personal jurisdiction over Defendants.

"Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met." *Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 2015 WL 539460, at *7 (S.D.N.Y. Feb. 6, 2015); *accord Peterson v. Islamic Republic of Iran*, 2013 WL 1155576, at *15 (S.D.N.Y. Mar. 13, 2013) ("New York law requires a greater showing of minimum contacts than would be required by the Due Process Clause alone"). Accordingly, Plaintiff has made a *prima facie* showing of personal jurisdiction over Jackson, and the motion to dismiss for lack of personal jurisdiction is denied.

## II.     Motion to Transfer to the Central District of California

Defendants seek to transfer the action to the Central District of California in the event the Court denies the motion to dismiss for lack of personal jurisdiction. Defendants argue that Plaintiff could have initially brought suit in the Central District of California, and that the

balance of factors strongly favors transfer because the majority of the parties and witnesses reside in California; the operative facts occurred in California; the majority of relevant documents are in California; Plaintiff's choice of forum deserves no deference; and trial efficiency and the interests of justice weigh in favor of trying the case in California. Def. PJ Mem. at 14-19. Plaintiff opposes transfer, arguing that Plaintiff's choice of forum must be respected, the facts relating to the relevant footage occurred in New York, and the potential witnesses reside in New York, in particular Muhammad, whose testimony will be critical. Pl. PJ Mem. at 18-20.

Transfer is appropriate where (1) the action "might have been brought" in the proposed venue, and (2) transfer would promote "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). Courts balance the following factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (citation and internal quotation marks omitted). "[A] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Vista Food Exch., Inc. v. Champion Foodservice, L.L.C.*, 2014 WL 3857053, at *16 (S.D.N.Y. Aug. 5, 2014) (citations and internal quotation marks omitted).

The instant action could have been brought in the Central District of California, as the Central District of California is the district where Defendants reside. 28 U.S.C. § 1400(a). The convenience of witnesses is considered "the most important factor in considering a § 1404(a)

motion to transfer." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F Supp. 2d 282, 286 (S.D.N.Y. 2004) (noting that "the court must qualitatively evaluate the materiality of the testimony that the witness may provide" and not simply "tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum"). Here, the locations of relevant witnesses are split between New York and California. California has Williams and his companies; AudioMicro, which licensed the disputed photos to Plaintiff; Lightning Entertainment, which will testify regarding the rights to the footage and photographs which Plaintiff represented that it held; Defendants; and the other purported co-owner of Plaintiff, Victorino Noval Productions. Def. PJ Mem. at 16-18. Plaintiff asserts, however, that necessary witnesses are in New York, such as Muhammad, individuals present at the relevant photo shoots, and the owners of the copyrights in some of the disputed photos. Pl. PJ Mem. at 18-20. The Court agrees with Defendants that Plaintiff's discussion of Muhammad's residence is somewhat vague. *See* Compl. ¶ 22 (referring to "Owner [Muhammad], who is and/or was located in New York, New York"). But it is clear that testimony from those present at the photo shoots will be relevant, as will testimony from the copyright owners of the disputed photographs, and that testimony from Muhammad will be pivotal.[3] Accordingly, the convenience of witnesses is evenly split between New York and California and therefore does not support a transfer to California.

---

[3] Although Defendants argue that Plaintiff has failed to identify witnesses and the scope of their testimony, Plaintiff has provided sufficient information for Defendants and the Court to understand the potential witnesses and their role in the litigation, Pl. PJ Mem. at 19.

Defendants assert that Plaintiff's choice of forum should not be respected because the operative facts have no connection to the chosen district and Plaintiff chose a forum other than its place of residence.[4]  But Plaintiff is formally a New York company, Compl. ¶ 58, regardless of Defendants' allegations to the contrary, *see* Rosenberg Decl. Ex. 5, and a large portion of the operative facts concerning the footage occurred in New York.  Accordingly, this factor does not weigh in favor of transfer.  Defendants also assert that they would be greatly inconvenienced if they were forced to litigate in New York because they do not reside or have offices in New York.  Def. PJ Mem. at 18.  This argument is conclusory, as Defendants have failed to articulate any burden beyond the implied need to travel, and so is rejected.

None of the remaining factors weigh in favor of transfer.  The facts, relevant documents, parties, and witnesses in this case are split between New York and California, and Defendants have failed to make a "strong case for a transfer."  *Williams v. Frank Martz Coach Co.*, 2014 WL 2002853, at *2 (E.D.N.Y. May 14, 2014) (citing *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).  Accordingly, the motion is denied.

### III.    Motion to Disqualify Raymond J. Markovich

Defendants also move to disqualify Plaintiff's counsel, Raymond J. Markovich, because he served as a producer of Plaintiff's documentary, served as transactional and intellectual property counsel in connection with the film, and negotiated licensing agreements at issue in this action.  Def. Mem. to Disqualify at 1.  Markovich was the sole signatory on the agreement to license the disputed footage, was involved in obtaining the license for the disputed photographs, and remains one of Plaintiff's managers.  *See* Compl. Ex. A, Ex. B.  Accordingly, Defendants

---

[4] The Court agrees that Plaintiff's "first-filed argument," Pl. PJ Mem. at 19, is inapplicable, because this principle applies to situations involving two competing lawsuits.

assert that Markovich is a necessary witness on significant issues of fact and should be barred from representing Plaintiff pursuant to Rule 3.7(a) of the New York State Rules of Professional Conduct. Def. Mem. to Disqualify at 5-9.

Plaintiff opposes the motion to disqualify, stating that Markovich did not negotiate or sign the licensing agreement for the photographs, only signed for the footage as a formality, has never met the key individuals involved in the suit, and therefore is not a necessary witness. Pl. Opp. to Disqualify Mot. at 5-10. Plaintiff also argues that it would suffer substantial hardship if Markovich were disqualified. *Id.* at 10.

The decision to disqualify an attorney is "a matter committed to the sound discretion of the district court," and the power to do so comes from the Court's "inherent power to preserve the integrity of the adversary process." *Acker v. Wilger*, 2013 WL 1285435, at *1 (S.D.N.Y. Mar. 29, 2013) (citations and internal quotation marks omitted). The Court is guided by the disciplinary rules of New York State. *Id.* New York State's Rule 3.7(a) states that

> [a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal.

Where, as here, "the moving party intends to call an adversary's attorney, the movant must demonstrate both that the lawyer's testimony is 'necessary' and that there exists a 'substantial likelihood that the testimony would be prejudicial to the witness-advocate's client.'" *Acker*, 2013 WL 1285435, at *1 (citing *Finkel v. Frattarelli Bros., Inc.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010)). The Court is to consider "the significance of the matters, weight of the

testimony, and availability of other evidence." *Id.* (citation and internal quotation marks omitted). The Second Circuit has identified four risks that Rule 3.7(a) is designed to alleviate:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009). Because Rule 3.7 "lends itself to opportunistic abuse[,] . . . [such motions] are subject to fairly strict scrutiny, particularly motions under the witness-advocate rule." *Id.* (citations and internal quotation marks omitted).

The issues presented here by Markovich serving as Plaintiff's attorney are exactly what Rule 3.7(a) seeks to prevent, and none of the exceptions apply. While Markovich asserts that his involvement was minimal and his necessary testimony nil, Defendants have demonstrated that he is a key witness on factual issues of great significance to the litigation. His testimony could undermine his client's claim. Plaintiff's claims to the contrary—that Plaintiff does not intend to call Markovich, that Markovich's testimony is unnecessary because it would be hearsay, that testimony on these issues can be obtained from "better witnesses," and that his involvement in the agreements at issue was insignificant—do not resolve these issues. Defendants intend to call Markovich; Markovich's statements would not necessarily be hearsay; Defendants have shown that Markovich's testimony cannot be obtained from better witnesses; and Defendants have demonstrated that Markovich's involvement was more than minimal. Markovich may be in the best, or only, position to testify about aspects of the footage and photo licensing agreements, given his direct involvement therein. Markovich also appears to be the only witness capable of testifying to Williams's role in acquiring the footage and photographs. Defendants have

specifically identified testimony that Markovich could give that would be prejudicial to Plaintiff, for example, testimony regarding the Estate-owned photographs and the failure to properly investigate the right to exploit the footage. Def. Mem. to Disqualify at 8-10.

Finally, Plaintiff's statement that disqualification of Markovich would cause substantial hardship because Plaintiff has "almost $0 in its bank account" and "cannot afford to even pay one lawyer," Williams Aff. ¶ 15, is "insufficient to avoid disqualification," *Gorbaty v. Wells Fargo Bank, N.A.*, 2011 WL 318090, at *3 (E.D.N.Y. Feb. 1, 2011) (citation and internal quotation marks omitted). "Because of the strong policy considerations in support of the advocate-witness rule, courts have given the substantial hardship exception a very narrow reading." *Sea Trade Maritime Corp. v. Coutsodontis*, 2011 WL 3251500, at *14 (S.D.N.Y. July 25, 2011) (citations and internal quotation marks omitted). Financial difficulties are insufficient to defeat an otherwise appropriate motion to disqualify.

Here, "[i]t appears that [Markovich] signed all or most of the critical documents at issue in this case." *Gorbaty*, 2011 WL 318090, at *3. Defendants have demonstrated that his testimony is necessary and that his representation of Plaintiff would violate the witness-advocate rule. Removing him as Plaintiff's attorney at this early stage in the litigation is appropriate. Applying the strict scrutiny necessary for such a motion, the Court grants the motion to disqualify.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the action for lack of personal jurisdiction or, in the alternative, to transfer the action to the Central District of California, is denied. The motion to disqualify Plaintiff's counsel, Raymond J. Markovich, is granted. The Clerk of the Court is directed to terminate the motions at Docket 24 and 28.

Plaintiff is directed to secure new counsel, who is to file a notice of appearance, within thirty days of the date of this decision.

Dated: New York, New York  
      September 3, 2015

SO ORDERED

_____  
PAUL A. CROTTY  
United States District Judge