UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
NOVAL WILLIAMS FILMS LLC,

       *Plaintiff,*

  - against -

JOHN BRANCA and JOHN MCCLAIN, EXECUTORS
OF THE ESTATE OF MICHAEL J. JACKSON,

       *Defendants.*
------------------------------------------x

14 Civ. 4711 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

  Plaintiff Noval Williams Films LLC ("Noval") seeks a declaratory judgment against the executors of Michael J. Jackson's estate ("Defendants") that it has not infringed any copyrights concerning photographs and footage included in its documentary film entitled "Michael: The Last Photo Shoots" (the "Picture") and that Defendants have no valid claims for breach, inducement of breach, or tortious interference of an alleged agreement.

  Defendants move to compel Noval to produce unredacted versions of nine partially redacted communications. The Court finds there is no attorney client/common interest privilege, but there is a limited work product protection. Accordingly, the Court grants in part and denies in part Defendants' motion.[1]

## BACKGROUND

  Noval claims that it owns and has copyrighted the Picture. Noval further claims that it entered into an agreement with Lightning Entertainment Group, Inc. ("Lightning") for Lightning

---

[1] Defendants filed portions of their motion papers under seal pursuant to a protective order. The protective order provides that the Court "retains discretion whether or not to afford confidential treatment" to information contained in any confidential document. Dkt. 77 at ¶ 9. The Court determines that the information contained in this Order and Opinion does not warrant confidential treatment, especially considering that the confidential documents at issue were produced by Noval, and Noval did not seal any portion of its opposition to the instant motion.

1

to exploit the Picture (the "Sales Agency Agreement"). Lightning, however, allegedly terminated the Sales Agency Agreement after Defendants claimed they may have rights in certain footage and photographs used in the Picture. Noval then commenced this declaratory judgment action. Noval contends that Defendants tortiously interfered with Noval's business relations with Lightning and caused Lightning to terminate the Sales Agency Agreement.

The parties have engaged in discovery, and on September 7, 2016, Noval produced nine partially redacted email threads sent to and/or from Lightning employees. Defendants move to compel production of unredacted versions of all nine communications. The Court reviewed the communications *in camera*.[2]

## ANALYSIS

Defendants advance two arguments for why the Court should compel Noval to produce in unredacted form the nine communications sent to and/or from Lightning employees. First, Defendants argue that the communications are not privileged. Noval counters that the redactions are proper pursuant to the "Joint Defense / Common Interest Rule, Attorney-Client Privilege and/or Attorney Work Product Privilege." Opp'n (Dkt. 88) at 1, 2, 4. Second, Defendants argue that even if the communications are privileged, Noval's selective disclosure resulted in a subject matter waiver. Noval disagrees.

### I.   Attorney-Client Privilege

The attorney-client privilege applies to "(1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of

---

[2] Defendants attach as Exhibit 1 to the Declaration of Joshua M. Rosenberg (Dkt. 84) ("Rosenberg Decl.") the nine email threads with redactions. The Court reviewed *in camera* eight of the email threads. The Court did not receive or review NWF000403 to NWF000404, but the entire email thread appears to be contained in NWF000535 to NWF000539, which the Court reviewed.

2

obtaining or providing legal advice." *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). Generally, "[a] party that shares otherwise privileged communications with an outsider is deemed to waive the privilege by disabling itself from claiming that the communications were intended to be confidential." *Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). However, pursuant to the common interest rule (sometimes referred to as the joint defense privilege), "the privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege." *Id.*

The common interest rule is an extension of the attorney-client privilege and applies to "those communications made in the course of an ongoing common enterprise and intended to further the enterprise." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). It "protect[s] the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Id.* The common interest rule does not apply where a strategy is merely "the impression of one side"; the strategy must be joint. *See United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999).

The burden is on Noval to establish the rule's applicability, *see Schwimmer*, 892 F.2d at 244, but it has failed to carry its burden of establishing that it shared a joint strategy with Lightning. There is no basis for applying the common interest rule. First, with respect to the redacted communications from March 7–10, 2014, the communications predate both Lightning's March 31, 2014 execution of the Sales Agency Agreement, as well as Defendants' May 19, 2014 letter regarding their possible rights in certain footage and photographs used in the Picture. Aff. of Craig J. Williams (Dkt. 89) ¶ 9; Am. Compl. (Dkt. 21) ¶ 48. As stated on Noval's privilege log, the redacted March 2014 communications concern "back end" and/or "negotiations

3

concerning Lightning deal." Rosenberg Decl. Ex. 8 at 6. Noval has offered no basis to conclude that these communications—which concern two parties' negotiation of a contract—reflect any joint defense effort or strategy.

Second, with respect to the remaining redacted communications from May 20–June 19, 2014, the documents submitted to the Court do not indicate that Noval and Lightning had a joint strategy with respect to Defendants' allegations. Instead, the documents clearly show that Lightning intended to act independently of Noval, almost immediately after Noval and Lightning received Defendants' first letter on May 19, 2014.

It appears that on May 21, 2014, counsel for Noval and counsel for Lightning spoke regarding Defendant's May 19, 2014 letter. Rosenberg Decl. Ex. 1 at NWF000267. Lightning's counsel described in an email later the same day that Noval's counsel "understands that he does not represent Lighting [sic] in this matter and is to take no action on [Lightning's] behalf." *Id.* Lightning's counsel followed up with a letter on May 27, 2014 noting that, starting on May 20, 2014, Noval indicated that it might sue Defendants. *Id.* Ex. 2 at NWF000541. The letter continued that if Noval filed the lawsuit, Noval would be in breach of the Sales Agency Agreement. *Id.* Further, although Noval refused to provide Defendants with a copy of the Picture, Lightning provided Defendants with a copy. *See* Am. Compl. ¶ 52; Defs.' Countercls. (Dkt. 50) ¶¶ 21–22; Pl.'s Reply to Defs.' Countercls. (Dkt. 68) ¶¶ 21–22. Taken together, these facts indicate that Lightning and Noval had very different strategies with respect to Defendants' allegations.

The only argument that Noval advances that the common interest rule applies is that it was contractually obligated to act in Lightning and Noval's joint defense. Opp'n (Dkt. 88) at 4. Noval contends that the Sales Agency Agreement required Noval, "upon notification from

4

Lightning of any claim concerning the Picture, to defend against any claims." *Id.* at 5. Noval also contends that the Sales Agency Agreement could only be amended, modified or changed "by a written instrument duly executed by authorized officers of the parties." *Id.* Noval's argument, therefore, is that because there was no written instrument modifying Noval's obligation to act in Noval and Lightning's joint defense, there was, *ipso facto*, a joint defense effort. But this ignores that Noval's defense obligations under the Sales Agency Agreement would only be triggered "[u]pon notice from [Lightning]." Rosenberg Decl. Ex. 2 at NWF000189. And notice was to be given "in writing." *Id.* at NWF000192. Noval has offered no evidence that Lightning gave Noval any written notice regarding Defendants' claim.

The Court therefore concludes that the common interest rule does not apply to the redacted communications at issue.

## II. Work Product Doctrine

The work product doctrine, set forth in Fed. R. Civ. P. 26(b)(3), "provides that materials prepared in anticipation of litigation are not discoverable absent a showing that the party seeking discovery has a substantial need for the materials and cannot obtain the equivalent without undue hardship." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 444–45 (S.D.N.Y. 2004). Materials are prepared in anticipation of litigation if they "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Schaeffler*, 806 F.3d at 43 (emphasis omitted).

Disclosure to third parties does not necessarily waive work product protection. "[C]ourts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege." *Merrill Lynch*, 229 F.R.D. at 446. Even where there is no common interest between the parties "courts generally find a waiver of the

5

work product [protection] only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." *See id.* at 445–46 (internal quotation marks omitted). "The party asserting the protection afforded by the work product doctrine has the burden of showing both that the protection exists and that it has not been waived." *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 169 (S.D.N.Y. 2002).

Noval has failed in part to sustain its burden. With respect to the redacted communications from March 7–10, 2014, Noval has provided no basis to conclude that the work product protection applies. Defendants did not send their first letter until over a month later, on May 19, 2014, and as described in the privilege log, the communications do not relate to pending or impending litigation. Further, there are inconsistencies in the redactions of certain communications. Specifically, Raymond Markovich's email of June 10, 2014 is redacted on NWF000276 but not on NWF000258. Certain of Mr. Markovich's and Ken DuBow's emails of May 20–21, 2014 are redacted in NWF000537 to NWF000539 but not in NWF000269 to NWF000271 and NWF000403 to NWF000404. The last word of Craig Williams' May 21, 2014 email is redacted on NWF000536 but not on NWF000269. And the last nine words of AnaLisa Valle's email of June 10, 2014 is redacted on NWF000258 but not on NWF000276. Noval has not argued that it inadvertently produced these inconsistently redacted emails, and so the Court concludes the work product protection is waived as to those communications. Finally, address fields, subject fields, date fields, signature blocks, and disclaimers in emails are at times redacted, and at times unredacted in redacted emails. Noval provides no basis to conclude that the address fields, subject fields, date fields, signature blocks, and disclaimers are work product.

The remaining redacted communications are protected by the work product doctrine. They were all drafted because of potential litigation involving Defendants, and although, as

6

discussed above, Noval and Lightning did not share a common interest, the record does not support the conclusion that the sharing of the communications substantially increased the risk that Defendants would be able to obtain the information.

## III. Subject Matter Waiver

Having determined that certain of the redacted communications are work product protected, Defendants argue, nonetheless, that disclosure is required under Fed. R. Evid. 502(a). Rule 502(a) provides that where a party selectively waives the work product protection, the waiver extends to undisclosed work product if "(1) the waiver [was] intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." The 2007 Advisory Committee Notes to Rule 502 explain that subject matter waiver "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary."

Fairness may require disclosure of work product where the disclosing party attempts to use the work product protection as both a sword and a shield in litigation—*i.e.*, by disclosing information that is favorable to its position while withholding information that is adverse to its position. *See Obeid v. La Mack*, 14 Civ. 6498 (LTS)(MHD), 2015 WL 5581577, at *10 (S.D.N.Y. Sept. 16, 2015). Where the disclosed information does not afford the disclosing party a tactical advantage that would lead to a selective and deceptive presentation of evidence at trial, however, selective waiver may be permissible. *See Swift Spindrift, Ltd. v. Alvada Ins., Inc.*, No. 9 Civ. 9342 (AJN)(FM), 2013 WL 3815970, at *5 (S.D.N.Y. July 24, 2013); *In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994).

### A.     NWF000201 to NWF000203

The Court concludes that the redacted emails do not, in fairness, need to be produced. The selective disclosure is not misleading and does not disadvantage Defendants.

### B.     NWF000224 to NWF000229

As with NWF000201 to NWF000203, the selective disclosure is not misleading and does not disadvantage Defendants. The redacted email does not, therefore, need to be produced.

### C.     NWF000267 to NWF000271, NWF000535 to NWF000539, and NWF000403 to NWF000404

There is no basis to conclude that the redactions to these communications would lead to a selective and deceptive presentation of evidence at trial. Noval is not afforded a tactical advantage through its redactions.

### D.     NWF000272 to NWF000277 and NWF000258 to NWF000259

Mr. DuBow's June 11, 2014 email on NWF000272 discusses generally Lightning's performance as it attempted to exploit the Picture, and addresses whether Lightning was trying to stall. The selective disclosure of Mr. DuBow's email paints a misleading picture of concerns relating to Lightning's attempts to exploit the Picture. Fairness requires that Noval produce in unredacted form the full communications.

## CONCLUSION

Defendants' motion is GRANTED in part and DENIED in part. Noval must produce in unredacted form:

- NWF000258 to NWF000259, NWF000272 to NWF000277, NWF000295 to NWF000301, and NWF000302 to NWF000309.

- Communications that have already been produced in unredacted form. Specifically, Mr. Markovich's email on NWF000276, certain of Mr. Markovich's and Mr. DuBow's emails in NWF000537 to NWF000539, the last word of Mr. Williams' email on NWF000536, and the last nine words of Ms. Valle's email on NWF000258.

- Address fields, subject fields, date fields, signature blocks, and disclaimers.

The Court is filing under seal, and will email to Noval's counsel, a highlighted copy of the eight communications that it reviewed *in camera*. The highlights indicate the portions of the communications that Noval may leave redacted. Redactions to NWF000403 to NWF000404, which the Court did not review *in camera*, must be made consistent with redactions to NWF000535 to NWF000539.

The Clerk of Court is directed to close the motion at Docket 83.

Dated: New York, New York
December 14, 2016

SO ORDERED

*Paul A. Crotty*
PAUL A. CROTTY
United States District Judge

9