UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NOVAL WILLIAMS FILMS LLC,

                        Plaintiff,

      -against-

JOHN BRANCA and JOHN MCCLAIN,
EXECUTORS OF THE ESTATE OF MICHAEL J.
JACKSON,

                   Defendants.

    Case No. 1:14-cv-04711-PAC

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## REDACTED MEMORANDUM OF LAW IN SUPPORT OF THE EXECUTORS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

## UNREDACTED VERSION FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Howard Weitzman
(*pro hac vice*)
Jeremiah T. Reynolds
(*pro hac vice*)
Joshua M. Rosenberg
(*pro hac vice*)
KINSELLA WEITZMAN ISER KUMP &
ALDISERT LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850
Email: hweitzman@kwikalaw.com
      jreynolds@kwikalaw.com
      jrosenberg@kwikalaw.com

Jerry D. Bernstein (JB7631)
Rither Alabre (RA9280)
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212.885.5000
Facsimile: 917.332.3766
Email: jbernstein@BlankRome.com
      ralabre@BlankRome.com

*Attorneys for Defendants and Counterclaimants John Branca and John McClain,
Executors of the Estate of Michael J. Jackson*

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................................2

    A.    The Estate's Pre-Litigation Communications. .................................................2

    B.    The Lightning Termination. ..........................................................................4

SUMMARY JUDGMENT STANDARD OF REVIEW ..........................................................5

ARGUMENT ..............................................................................................................................6

POINT ONE:  PLAINTIFF'S CLAIM NO. 1 FOR DECLARATORY RELIEF TO
EXPLOIT THE FOOTAGE AND THE FILM FAILS AS A MATTER OF LAW ...........6

    A.    Plaintiff Cannot Prove It Has The Right to Exploit The Footage. ...........................6

    B.    Plaintiff Cannot Rely On The Statutory Presumption Of Ownership Based
On The Copyright Registration Of The Footage. ...........................................9

POINT TWO:  PLAINTIFF'S CLAIM NO. 2 FOR DAMAGES UNDER 28 U.S.C. §
2202 FAILS AS A MATTER OF LAW .........................................................................11

    C.    The Executors Did Not Engage In Tortious Conduct. ..........................................12

        1.    California's Litigation Privilege Applies In This Case. ............................12

        2.    California's Litigation Privilege Bars Plaintiff's Damages Claim. ............14

        3.    New York's Litigation Privilege And Plaintiff's Failure To Prove
Wrongful Means Also Bar Plaintiff's Damages Claim. ........................16

    D.    Plaintiff Cannot Prove The Essential Element Of Causation. ...............................21

CONCLUSION ..........................................................................................................................23

## TABLE OF AUTHORITIES

Page

## CASES

*Arista Records, LLC v. Doe 3,*
   604 F.3d 110 (2d Cir. 2010)........................................................................... 11

*Arochem Int'l, Inc. v. Buirkle,*
   767 F. Supp. 1243 (S.D.N.Y. 1991), *aff'd*, 968 F.2d 266 (2d Cir. 1992) ...................... 14

*AroChem International, Inc. v. Buirkle,*
   968 F.2d 266 (2d Cir. 1992)........................................................................... 13

*Branca v. Mann,*
   2012 WL 3263610 (C.D. Cal. Aug. 10, 2012)..................................................... 18

*Brown v. Latin American Music Co., Inc.,*
   498 F.3d 18 (1st Cir. 2007) (same) ................................................................. 10

*Bruce Lee Enterprises, LLC v. A.V.E.L.A., Inc.,*
   2013 WL 822173 (S.D.N.Y. Mar. 6, 2013) .............................................. 17, 18, 19

*Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am.,*
   749 N.Y.S.2d 249 (1st Dep't 2002) ................................................................. 21

*Carvel Corp. v. Noonan,*
   3 N.Y.3d 182 (2004) .................................................................................... 20

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986)...................................................................................... 6

*Estate of Beach,*
   15 Cal. 3d 623 (1975). ................................................................................. 15

*Estate of Sanders,*
   40 Cal. 3d 607 (1985) .................................................................................. 15

*Franklin v. Dynamic Details, Inc.,*
   116 Cal. App. 4th 375 (2004) ........................................................................ 21

*Front, Inc. v. Khalil,*
   24 N.Y.3d 713 (2015)................................................................................... 19

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) ............................................................................... 19

*Leegin Creative Leather Products, Inc. v. M. M. Rogers & Co.,*
   1994 WL 761725 (C.D. Cal. Oct. 24, 1994)................................................. 12, 15

*Lerette v. Dean Witter Organization, Inc.,*
   60 Cal. App. 3d 573 (1976) ............................................................................ 12, 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ........................................................................................ 6

*Memnon v. Clifford Chance US, LLP,*
   667 F. Supp. 2d 334 (S.D.N.Y. 2009) ............................................................ 21

*Motta v. Samuel Weiser, Inc.,*
   768 F.2d 481 (1st Cir.), cert. denied 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d
   575 (1985) ...................................................................................................... 6

*Officemax Inc. v. Cinotti,*
   966 F. Supp. 2d 74 (E.D.N.Y. 2013) ............................................................. 19

*Pecorino v. Vutec Corp.,*
   934 F. Supp. 2d 422 (E.D.N.Y. 2012) ........................................................... 11

*Playboy Enterprises, Inc. v. Dumas,*
   53 F.3d 549 (2d Cir. 1995) ............................................................................. 8

*Radiancy, Inc. v. Viatek Consumer Prod. Grp. Inc.,*
   138 F. Supp. 3d 303 (S.D.N.Y. 2014) ........................................................... 20

*RFP LLC v. SCVNGR, Inc.,*
   788 F. Supp. 2d 191 (S.D.N.Y. 2011) ........................................................... 20

*Rubin v. Green,*
   4 Cal. 4th 1187 (1993) .................................................................................. 12, 15

*S&L Vitamins, Inc. v. Australian Gold, Inc.,*
   521 F. Supp. 2d 188 (E.D.N.Y. 2007) ........................................................... 19

*Sem–Torq, Inc. v. K Mart Corp.,*
   936 F.2d 851 (6th Cir. 1991) (same) .............................................................. 10

*Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.,*
   803 N.Y.S.2d 512 (1st Dep't 2005) ............................................................... 19

*Silberg v. Anderson,*
   50 Cal. 3d 205 (1990) ................................................................................... 12, 15

*Specht v. Netscape Commc'ns Corp.,*
   150 F. Supp. 2d 585 (S.D.N.Y. 2001), aff'd, 306 F.3d 17 (2d Cir. 2002) ...... 13

*Totalplan Corp. of Am. v. Colborne,*
   14 F.3d 824 (2d Cir. 1994) ............................................................................. 13

*Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.,*
   1997 WL 158364, 42 U.S.P.Q.2d (BNA) 1398 (S.D.N.Y. 1997) .................. 10

*Ullmannglass v. Oneida, Ltd.,*
   121 A.D.3d 1371 (3d Dep't 2014) ................................................................. 22

*Universal City Studios, Inc. v. Nintendo Co.,*
  797 F.2d 70 (2d Cir. 1986)...................................................................... 17

*Women's Interart Ctr., Inc. v. N.Y. City Econ. Dev. Corp.,*
  132 A.D.3d 442 (2015) ........................................................................ 22

## STATUTES

17 U.S.C. § 410(c) ...................................................................................... 9

California Civil Code § 47 ....................................................................... 12, 14

California Civil Code § 47(b) ...................................................................... 12

Fed. R. Civ. P. 26(a)(1)(A)(i) ....................................................................... 7

Fed. R. Civ. P. 30(b)(6) ................................................................................. 7

Fed. R. Civ. P. 37(c)(1) ................................................................................. 7

Fed. R. Civ. P. 56(a) ...................................................................................... 5

Fed. R. Civ.P. 26 ............................................................................................ 6

Fed. R. Evid. 602 ........................................................................................... 7

Fed. R. Evid. 901 ....................................................................................... 7, 8

## PRELIMINARY STATEMENT

Plaintiff Noval Williams Films LLC ("Plaintiff") has asserted two claims for declaratory relief against Defendants John Branca and John McClain, co-executors of the Estate of Michael Jackson (the "Executors" or the "Estate"): (1) declaratory relief that Plaintiff can freely exploit footage of Michael Jackson (the "Footage") in the film, "Michael: The Last Photo Shoots" (the "Film"); and (2) "further relief" under 28 U.S.C. § 2202. Both claims fail as a matter of law and should be dismissed for the reasons set forth below.

First, Plaintiff cannot prove it has the right to exploit the Footage. Plaintiff was not the "author" of the Footage, and therefore Plaintiff must demonstrate it has the right to exploit the Footage through its chain of title. Plaintiff alleges the initial owner of the Footage was H. Hasaun Muhammad ("Muhammad"). Yet Plaintiff has conceded it cannot authenticate the document purporting to transfer Muhammad's ownership of the Footage to Craig Williams (the director and producer of the Film), whose company later allegedly granted an exclusive license to Plaintiff to exploit the Footage. Nor can Plaintiff authenticate the one-page "work-for-hire" agreement that purportedly gave Muhammad ownership of the Footage in the first instance. Plaintiff also cannot rely on the statutory presumption of ownership because the copyright registration it relies upon was not filed within five years of first publication of the Footage. As such, Plaintiff cannot prove it has the right to exploit the Footage and its Claim No. 1 for declaratory relief should be dismissed.

Second, Plaintiff's claim for damages under the guise of "further relief" under 28 U.S.C. § 2202 fails as a matter of law. Plaintiff concedes that the only alleged act by the Executors that supposedly caused damage to Plaintiff was the Executors' transmission of pre-litigation letters in May and June of 2014 to Plaintiff and its sales agent for the Film, Lightning Entertainment ("Lightning"). The law is clear that these letters are protected by the litigation privilege and do

1

not constitute "wrongful" conduct for a tortious interference claim (a claim that Plaintiff did not plead in its Complaint but admitted in discovery is the sole basis for its damages claim). Furthermore, Plaintiff cannot prove the essential element of "causation" for its Section 2202 claim of tortious interference damages.

With no material fact in dispute, the Executors are entitled to summary judgment or, in the alternative, summary adjudication, in their favor on Plaintiff's claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The Estate's Pre-Litigation Communications.

On or around May 15, 2014, the Estate learned from public sources that Craig Williams and Lightning were exploiting a film about Michael Jackson which features a "behind the scenes" look of Jackson's photo shoots in 2007 with Vogue and Ebony magazines. (Declaration of Karen Langford ["Langford Decl."], ¶ 10, Ex. H). Jackson's custom and practice had been at all material times to control ownership and exploitation of video footage and photographs taken of him in a private setting. (Declaration of Evvy Tavasci ["Tavasci Decl."], ¶¶ 3-5; Langford Decl., ¶¶ 4-6, 11). Jackson's custom and practice was that such footage was shot either as a work-for-hire for Jackson, or subject to a nondisclosure agreement with Jackson (or both). (Langford Decl., ¶¶ 5, 11). Based on Jackson's custom and practice, the Estate believed (and continues to believe) that the "behind the scenes" footage in the Film was shot by someone who was hired by Jackson, and that such footage could only be publicly and commercially exploited with his or the Estate's consent. (Langford Decl., ¶¶ 4-6, 11-12).

The Estate's belief that Craig Williams and Lightning did not have the right to exploit the Footage was bolstered by the timing of the decision to exploit footage that was allegedly created in 2007, yet not publicly and commercially exploited until 2014, five years after Jackson's death in 2009. (Langford Decl., ¶ 12). Given the Estate's duty to protect its intellectual property and to

prevent unauthorized exploitation of images of Jackson, such "after death" exploitation of footage of Jackson required the Estate's close scrutiny and investigation. (Langford Decl., ¶ 12). Accordingly, on May 20, 2014, the Estate's attorneys sent a letter to Craig Williams and Lightning setting forth the Estate's foregoing contentions and requesting a copy of the Film to further examine the Estate's rights in the Film. (Declaration of Howard Weitzman ["Weitzman Decl."], ¶ 4, Ex. C; Declaration of Joshua M. Rosenberg ["Rosenberg Decl."], Ex. 15, Ex. R [Williams Depo. Tr. at 147:20-148:24], Ex. S [Markovich Depo. Tr. at 161:8-162:5]).

On May 28, 2014, Ray Markovich, one of Plaintiff's managers, sent a letter to the Estate explaining how Plaintiff obtained the Footage, what the Footage actually contained, and why Plaintiff believed it could exploit the Footage. (Weitzman Decl., Ex. D; Rosenberg Decl., Ex. 16, Ex. R [Williams Depo. Tr. at 153:11-25], Ex. S [Markovich Depo. Tr. at 46:6-47:23, 163:5-164:3]). Plaintiff refused to provide a copy of the Film to the Estate. (Rosenberg Decl., Ex. 16). Markovich's May 28, 2014 letter to the Estate did not include any of the alleged agreements or emails regarding the Footage referenced in his letter. (Weitzman Decl., ¶ 5).

On June 11, 2014, the Estate sent a response letter to Markovich and Williams further explaining the Estate's position regarding its rights in the Footage, and again requested a copy of the Film. (Weitzman Decl., ¶ 6, Ex. E; Rosenberg Decl., Ex. 17, Ex. S [Markovich Depo. Tr. at 164:4-165:6]). Plaintiff never responded to this letter and never provided a copy of the Film to the Estate. (Weitzman Decl., ¶ 6).

On June 12, 2014, Lightning provided a DVD copy of the Film to the Estate. (Weitzman Decl., ¶ 7). The Estate reviewed the Film and found it indeed contained private footage of Jackson that the Estate believed could not be publicly and commercially exploited without the Estate's consent, including but not limited to sensitive footage of Jackson in his private dressing

room. (Langford Decl., ¶ 16). The Film also contained photographs (the "Photographs") in which companies wholly owned by the Estate – Triumph International, Inc. ("Triumph") and Optimum Productions ("Optimum") – own the copyrights. (Langford Decl., ¶ 17, Exs. J, K; Rosenberg Decl., Exs. 10-11, Ex. R [Williams Depo. Tr. at 120:17-121:15, 124:11-126:8]).

To protect the legal rights and economic interests of the Estate in good faith, as the Estate has previously and successfully done in matters involving the unauthorized exploitation of Jackson's image and the Estate's intellectual property, and to fulfill their duties to the Estate and to protect its assets (which was the case for all of their pre-litigation letters at issue here), the Executors sent cease-and-desist letters to Lightning and to Plaintiff on June 17 and 18, 2014, respectively. (Weitzman Decl., ¶¶ 3, 8, 9, Exs. F, G; Langford Decl., ¶¶ 20-21; Rosenberg Decl., Ex. 18, Ex. R [Williams Depo. Tr. at 160:2-18], Ex. S [Markovich Depo. Tr. at 177:9-25]). Plaintiff never sent a response letter to the Estate's June 18, 2014 letter. (Weitzman Decl., ¶ 8).

**B.    The Lightning Termination.**



(Rosenberg Decl., Ex. 12, Ex. S [Markovich Depo. Tr. at 83:23-87:10]).

(Rosenberg Decl., Ex. 12 at § 4.1, 4.2, Sales Agency Agreement Exhibit A [NWF000182, 194-195]).

(Declaration of AnaLisa Valle ["Valle Decl."], ¶ 2, Ex. A at p. 2 [NWF000542]; Rosenberg Decl., Ex. 13, Ex. S [Markovich Depo. Tr. at 91:21-92:14, 94:10-

20]).

████████████████████████████████████████████████████████████████

████████████████ (Valle Decl., Ex. A at 2 [NWF000542], Rosenberg Decl., Ex. 13 at 2).

By June 26, 2014, Plaintiff did not deliver all of the items to Lightning listed on page 2 of

Lightning's May 27, 2014 letter, nor did Plaintiff receive any acknowledgment from Lightning

that the breach had been cured and all items had been delivered. (Rosenberg Decl., Ex. S

[Markovich Depo. Tr. at 101:10-23, 146:10-21]).████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ (Valle Decl., ¶ 3, Ex. B; Rosenberg Decl., Ex. 14, Ex.

S [Markovich Depo. Tr. at 99:5-100:8]).████

████████████████████████████████████████████████████████████

████████████████████████████████ (Valle Decl., ¶ 3, Rosenberg

Decl., Ex. 14).████████████████████████████████████████████

████████████████████████████ (*Id.* [emphasis added]).

On June 25, 2014, Plaintiff filed its initial complaint against the Executors. (Rosenberg

Decl., Ex. 3, Ex. S [Markovich Depo. Tr. at 20:6-21:3]). Plaintiff subsequently amended its

complaint, and its First Amended Complaint (the "Complaint") does not plead any claim for

tortious interference. (Rosenberg Decl., Ex. L). Plaintiff's Complaint only includes two claims:

(1) declaratory relief to lawfully exploit the Footage and the Film; and (2) "further relief" under

28 U.S.C. § 2202. (*Id.* at pp. 11-13).

## SUMMARY JUDGMENT STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). Where, as here, the nonmoving party (Plaintiff) will have the burden of proof at

trial, the moving parties (the Executors) need only show that there is no evidence to support a

necessary part of the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986). This burden is met by simply "showing – that is, pointing out to the district court – that

there is an absence of evidence to support the nonmoving party's case." *Id.* Once the moving

party meets this burden, the burden shifts to the nonmoving party to "come forward with specific

facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation and quotation omitted).

## ARGUMENT

### POINT ONE:  PLAINTIFF'S CLAIM NO. 1 FOR DECLARATORY RELIEF TO EXPLOIT THE FOOTAGE AND THE FILM FAILS AS A MATTER OF LAW

#### A.    Plaintiff Cannot Prove It Has The Right to Exploit The Footage.

Plaintiff's Claim No. 1 seeks a declaration from this Court that Plaintiff can freely exploit

the Footage (and the Film containing the Footage and the Photographs). (Rosenberg Decl., Ex. L

at pp. 11-12). However, "[i]f a plaintiff is not the author of the copyrighted work then he or she

must establish a proprietary right through the chain of title in order to support a valid claim to the

copyright." *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir.), cert. denied 474 U.S.

1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985) (cites omitted).

Plaintiff alleges the initial owner of the Footage was H. Hasaun Muhammad

("Muhammad") and that Muhammad transferred ownership of the Footage to Craig J.

Williams/Craig J. Williams Productions on or around May 21, 2013.[1] (Rosenberg Decl., Ex. L at

---

[1] Muhammad has not been deposed in this case and Plaintiff has not produced any declarations or affidavits from Muhammad. (Rosenberg Decl., ¶ 13) In its FRCP 26 Initial Disclosures, Plaintiff listed Muhammad as a witness, stated that Williams is "the only individual related to Plaintiff that knows Mr. Muhammad," and stated that Plaintiff would provide Muhammad's current address and telephone number after receiving that information from Williams. (Rosenberg Decl., ¶ 13, Ex. 4 at p. 3, Ex. R [Williams Depo. Tr. at 31:6-32:16]). Plaintiff never provided Muhammad's contact information. (Rosenberg Decl., ¶ 13). Williams

¶ 44.) Plaintiff alleges that Williams in turn transferred ownership to Bonaventura Films, LLC, which granted an exclusive license to Plaintiff on November 1, 2013. (*Id.*, at ¶¶ 45-46). But Plaintiff has failed to produce any evidence proving that Muhammad ever owned the Footage. The only document that Plaintiff relies on to assert that Muhammad was the initial owner of the Footage and could exploit it without Jackson's consent is a one page, purported "Video/Photographic Work-For-Hire Agreement" dated September 24, 2007 (the "2007 Agreement") that is attached as an exhibit to the 2013 Content Acquisition Agreement wherein Muhammad allegedly transferred the Footage to Williams. (Rosenberg Decl., ¶ 14, Ex. 5 at p. 7, Ex. R [Williams Depo. Tr. at 35:6-11, 36:6-14, 45:3-46:5, 87:8-95:22, 97:4-10, 112:21-113:9], Ex. L at ¶ 44).[2] The two purported signatories to the 2007 Agreement are Muhammad and Matthew Akers. (Rosenberg Decl., ¶ 14, Ex. 5 at p. 7.)

Plaintiff cannot rely on the 2007 Agreement to prove it can exploit the Footage because it cannot authenticate the document and it has no admissible evidence regarding the negotiation, creation, and execution of the document. Fed. R. Evid. 901 and 602. Williams and Markovich – who are both "managers" of Plaintiff and its authorized agents – were offered by Plaintiff as its FRCP 30(b)(6) designees, and both admittedly cannot authenticate Muhammad's or Akers'

---

admitted in his deposition that he never had Muhammad's current address and telephone number and does not currently have or know Muhammad's current address and telephone number. (Rosenberg Decl., Ex. R [Williams Depo. Tr. at 30:22-32:16, 36:20-37:13, 95:13-22, 98:11-99:1]). Markovich also does not know Muhammad's current address and telephone number. (Rosenberg Decl., Ex. S [Markovich Depo. Tr. at 57:10-13]). The Executors have also been unable to locate Muhammad. (Rosenberg Decl., ¶ 13). Given Plaintiff's failure to disclose this information that Plaintiff claimed it possessed and promised to provide in its Initial Disclosures, Plaintiff should be precluded from now offering any evidence from Muhammad. *See* Fed. R. Civ. P. 26(a)(1)(A)(i), 37(c)(1).

[2] As set forth in Paragraph 14 of the Rosenberg Declaration, the Executors have attached Exhibit 5 solely to challenge its admissibility and authenticity, including the 2007 Agreement attached as the last page of Exhibit 5. Exhibit 5 is also attached as "Exhibit D" to Plaintiff's Amended Complaint (the Amended Complaint is Exhibit L to the Rosenberg Declaration).

purported signatures on the 2007 Agreement. (Rosenberg Decl., Ex. R [Williams Depo. Tr. at

11:14-23, 49:15-17, 87:8-95:22, 103:6-17, 103:25-104:2], Ex. S [Markovich Depo. Tr. at 9:5-

11:19, 22:1-18, 69:23-70:8, 76:22-77:18]). Thus, the 2007 Agreement is inadmissible, has no

evidentiary value, and should be disregarded by this Court.  Fed. R. Evid. 901 and 602.[3]

Furthermore, even if the 2007 Agreement were somehow admissible (it is not), that

alleged agreement does not prove that Muhammad ever owned the Footage. The 2007

Agreement makes no reference whatsoever to the "work" being commissioned. (Rosenberg

Decl., ¶ 14, Ex. 5 at p. 7) There is no mention of Michael Jackson nor the photo shoots that are

the subject of the Footage. (*Id.*) Williams and Markovich have no personal knowledge regarding

the circumstances surrounding the creation, negotiation, and execution of the 2007 Agreement

and the underlying Footage. (Rosenberg Decl. Ex. R [Williams Depo. Tr. at 44:3-25, 57:5-17,

87:8-93:1, 182:11-185:17], Ex. S [Markovich Depo. Tr. at 9:20-10:10, 76:22-77:18, 217:1-

220:2]). As such, even if the 2007 Agreement were somehow admissible, Plaintiff cannot prove

that the "work" referenced in the 2007 Agreement was the Footage and Plaintiff cannot prove

that Akers allegedly shot the Footage as a "work specially ordered or commissioned" by

Muhammad. *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 558 (2d Cir. 1995).

Indeed, on its face, the 2007 Agreement appears to contradict the assertion that

Muhammad was the owner of the Footage. Muhammad and his company, Ambassadors Media,

Marketing & Management Group LLC, are defined in the 2007 Agreement as "Client."

(Rosenberg Decl., ¶ 14, Ex. 5 at p. 7). Matthew Akers is defined in that agreement as

---

[3] Plaintiff also cannot authenticate Muhammad's signature on the alleged 2013 Content
Acquisition Agreement – which contains the 2007 Agreement as an exhibit – wherein
Muhammad allegedly transferred the Footage to Williams. (Rosenberg Decl., ¶ 14, Ex. 5 at p. 5,
Ex. R [Williams Depo. Tr. at 70:4-71:21]). Thus, the 2013 Content Acquisition Agreement is
also inadmissible, has no evidentiary value, and should be disregarded by this Court. Fed. R.
Evid. 901.

"Photographer/Videographer." (*Id.*). The 2007 Agreement states that "[t]he undersigned parties

agreement that all rights, copyrights, titles, and interest in any photographs or video footage

taken by photographer/videographer, on behalf of Client belong solely and exclusively to the

**Owner** free from any claims whatsoever by the Photographer/Videographer." (*Id.*) (emphasis

added). It appears that Muhammad and his company hired Akers to take photos and video on

behalf of the "Owner." The term "Owner" is not defined in the agreement but does not appear to

refer to Muhammad or his company who are instead separately defined as "Client." Accordingly,

the 2007 Agreement appears to affirmatively contradict Muhammad and his company's

purported ownership of the Footage.

    **B.**    <u>Plaintiff Cannot Rely On The Statutory Presumption Of Ownership Based On The Copyright Registration Of The Footage</u>.

Plaintiff has stated that it intends to rely upon the statutory presumption of ownership

afforded by Bonaventura Films' copyright registration of the Footage. [*See* Dkt. # 98]. The

Copyright Act provides that "[i]n any judicial proceedings the certificate of a registration *made*

*before or within five years after first publication of the work* shall constitute prima facie

evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary

weight to be accorded to the certificate of a registration made thereafter shall be within the

discretion of the court." 17 U.S.C. § 410(c) (emphasis added).

On August 15, 2014, Craig Williams' company Bonaventura Films registered the

copyright in the Footage. (Rosenberg Decl., Ex. 34, Ex. S [Markovich Depo. Tr. at 186:20-

188:21]). This was the first time the copyright in the Footage had been registered. (Rosenberg

Decl., Ex. S [Markovich Depo. Tr. at 184:14-25, 186:10-188:21]; Rosenberg Decl., ¶ 28).

However, Plaintiff has admitted that first publication of the footage occurred sometime in 2007,

more than five years prior to the first registration of the copyright in the Footage. (Rosenberg

Decl., Ex. L at ¶ 17, Ex. 22 at p. 8 [Interrogatory No. 8], Ex. Q [NWF000158-161], Ex. R

[Williams Depo. Tr. at 182:11-183:7]). Consequently, Plaintiff is not entitled to benefit from the

prima facie presumption of ownership under the Copyright Act because registration did not

occur within five years of first publication. *Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*,

1997 WL 158364, 42 U.S.P.Q.2d (BNA) 1398 (S.D.N.Y. 1997) (no prima facie presumption of

ownership because copyright registration occurred more than five years after first publication);

*Brown v. Latin American Music Co., Inc.*, 498 F.3d 18, 24 (1st Cir. 2007) (same); *Sem-Torq,*

*Inc. v. K Mart Corp.*, 936 F.2d 851, 854 (6th Cir. 1991) (same).

The Court should refuse to accord any evidentiary weight to the copyright registration of

the Footage. First, the alleged original owner of the Footage – Muhammad – never registered the

copyright at all and has not testified in this case. The Court should be skeptical of the

circumstances surrounding a copyright registration by a transferee that occurred several years

after Jackson's death when Jackson could not testify to contradict the claim of ownership.

Moreover, as discussed above, Plaintiff has admitted that it cannot authenticate the underlying

document (the 2007 Agreement) it believes provides a basis for its rights in the Footage. And, as

discussed above, the face of the 2007 Agreement appears to affirmatively contradict

Muhammad's alleged claim of ownership. Given these glaring issues in the chain of title, the

Court should accord no weight to the copyright registration of the Footage by Bonaventura Films

in August 2014.

Accordingly, the Court should grant summary judgment in favor of the Executors on

Plaintiff's Claim No. 1 because Plaintiff has failed to establish its right to exploit the Footage.[4]

---

[4] For purposes of summary judgment, it is unnecessary to address the issue of Plaintiff's
rights in the Photographs because the majority of the Film is comprised of the Footage and
Plaintiff cannot exploit the Film if it has no rights in the Footage.

**POINT TWO:  PLAINTIFF'S CLAIM NO. 2 FOR DAMAGES UNDER 28 U.S.C. § 2202 FAILS AS A MATTER OF LAW**

Plaintiff's Claim No. 2 is for "Further Relief" under 28 U.S.C. § 2202. (Rosenberg Decl., Ex. L at p. 13). In discovery, Plaintiff stated that the "further relief" it seeks under Section 2202 is damages for alleged tortious interference by the Executors. (Rosenberg Decl., Ex. 20 at ¶¶ 2, 7, Ex. 23 at pp. 3-9, Ex. R [Williams Depo. Tr. at 166:17-167:22, 185:18-186:19], Ex. S [Markovich Depo. Tr. at 116:6-117:7, 118:4-10]). Plaintiff also admits that the only acts of the Executors for which Plaintiff seeks damages in this case are the letters sent by the Executors to Plaintiff and Lightning in May and June of 2014. (Rosenberg Decl. Ex. S [Markovich Depo. Tr. at 159:20-25]).

Plaintiff did not plead any claim for tortious interference in its Complaint, including whether the alleged interference was with existing contractual relations or future economic relations. (Rosenberg Decl., Ex. L). Plaintiff did not plead the requisite elements of a tortious interference claim, did not plead sufficient factual allegations for those elements, and never amended its Complaint to include a claim for tortious interference. (*Id.*). Therefore, Plaintiff's Complaint failed to comply with FRCP 8 and failed to give the Executors fair notice of Plaintiff's tortious interference claim. For this reason alone, Plaintiff's Section 2202 claim should be dismissed. *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (a complaint must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests"); *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422, 450 (E.D.N.Y. 2012) (plaintiff not allowed to "avoid ever having to adequately plead the necessary elements of a claim by simply including it as an alternative theory for relief under one cause of action").

Even if Plaintiff did give fair notice of its claim for tortious interference damages under its Section 2202 claim (and Plaintiff did not), the Court should grant the Executors' summary

judgment motion on that claim. First, as discussed in the previous section, Plaintiff cannot demonstrate it has a right to exploit the Footage. Second, even if Plaintiff can prove it has the right to exploit the Footage, the litigation privilege bars Plaintiff's Section 2202 claim and Plaintiff cannot prove the Executors engaged in "wrongful" conduct for a tortious interference claim. Third, even if the litigation privilege does not apply, Plaintiff's claim for tortious interference damages still fails as a matter of law because Plaintiff has no admissible evidence to prove the requisite element of causation. For the foregoing reasons, explained in more detail below, the Court should grant the Executors' motion for summary judgment in their favor on Plaintiff's Claim No. 2 for "further relief" under Section 2202.

### C.   The Executors Did Not Engage In Tortious Conduct.

#### 1.   California's Litigation Privilege Applies In This Case.

California has a broad statute – California Civil Code § 47 – referred to as the "litigation privilege" or "judicial-proceedings privilege" that immunizes a party from liability for sending cease-and-desist letters, demand letters, and other communications made before litigation commences. California Civil Code § 47(b); *Lerette v. Dean Witter Organization, Inc.*, 60 Cal. App. 3d 573, 577-78 (1976) (Section 47 privilege extends to demand letters); *Leegin Creative Leather Products, Inc. v. M. M. Rogers & Co.*, 1994 WL 761725, at *2 (C.D. Cal. Oct. 24, 1994) (Section 47 privilege extends to cease-and-desist letters); *Rubin v. Green*, 4 Cal. 4th 1187, 1193-95 (1993) (collecting cases) (Section 47 privilege extends to communications with "some relation" to anticipated litigation). California's Section 47 litigation privilege is absolute and immunizes a party from liability based on ***all tort claims*** except malicious prosecution. *Silberg v. Anderson,* 50 Cal. 3d 205, 215-16 (1990).

Where, as here, jurisdiction "is based on diversity of citizenship as well as the presence of a federal question, we follow the choice of law rules of New York." *Totalplan Corp. of Am. v.*

*Colborne*, 14 F.3d 824, 832 (2d Cir. 1994). If this Court finds its jurisdiction is based only on

federal question, New York's choice-of-law analysis, rather than the federal choice-of-law

analysis, should still apply because Plaintiff's damages claim – tortious interference – sounds in

state substantive law. *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 591 (S.D.N.Y.

2001), *aff'd*, 306 F.3d 17 (2d Cir. 2002).

     The Second Circuit specifically held that California law should apply when California's

Section 47 judicial-proceedings privilege is implicated. In *AroChem International, Inc. v.

Buirkle*, 968 F.2d 266 (2d Cir. 1992), a New York plaintiff brought an action for defamation and

tortious interference with a contractual and commercial relationship against a New Jersey

defendant for acts committed in California. *Id.* at 267. In *AroChem*, as in the instant case, the

issue was whether California's judicial-proceeding privilege immunized the conduct from suit

for defamation and related torts. The Second Circuit ruled that "[a] judicial-proceeding privilege

is *conduct relating* ... [as][t]he purpose of a common law or statutory privilege is the regulation

of defamatory conduct that occurs within a state's borders." *Id.* at 270 (emphasis added). The

court reasoned that:

> The judicial-proceeding privilege would lose its force if weight were given to the
> domicile of the parties or the place of injury in determining choice of law. Were
> the law of some other state to be applied in the case of California's judicial-
> proceeding privilege, for example, the incentive of parties to California litigation
> to rely upon that privilege would be gravely undermined because they cannot
> ensure that ensuing tort litigation will occur in California. To the contrary, they
> can be sure that, if the law of, say, the forum state, were to be applied, plaintiffs
> would always bring the actions in a forum with a narrow privilege. We must,
> therefore, apply the law of the locus state.

*Id.* at 271.

     The Court should reach the same result as the Second Circuit did in *AroChem*. The

Executors are domiciled in California, the Estate is being administered in California, the letters

were sent by California counsel, and Lightning (the third party whose contract with Plaintiff was allegedly interfered with) is based in California and received the letters in California. (Langford Decl., ¶¶ 7-8; Weitzman Decl., Exs. C, E, F, G; Rosenberg Decl., Exs. P, 12, 15, 17, 18). In sending their letters in May and June of 2014 to Plaintiff and Lightning, the Executors and their attorneys relied on California Civil Code section 47 which, as explained in *AroChem,* is a conduct-regulating privilege that warrants application of California law even if the plaintiff allegedly suffered its injury in another state. *AroChem,* 968 F.2d at 270-71. (Weitzman Decl., ¶ 9).

Plaintiff will incorrectly contend that New York law should apply because Plaintiff is registered as an LLC in New York and that is where Plaintiff allegedly suffered its injury. However, "[s]tanding alone, plaintiffs' residence is not enough to determine the choice of law." *Arochem Int'l, Inc. v. Buirkle*, 767 F. Supp. 1243, 1247-48 (S.D.N.Y. 1991), *aff'd*, 968 F.2d 266 (2d Cir. 1992). That is especially true here, as all of Plaintiff's members and managers reside in California, and Plaintiff has admitted that its ***only*** connection to New York is that it is registered as an LLC in New York. (Rosenberg Decl., Ex. R [Williams Depo. Tr. at 103:6-17, 103:25-104:16, 118:3-19]).

For the foregoing reasons, the Court should find that California's litigation privilege contained in California Civil Code section 47 applies to Plaintiff's Section 2202 damages claim.

> ### 2.   California's Litigation Privilege Bars Plaintiff's Damages Claim.

California Civil Code § 47(b) provides in part that "[a] privileged publication or broadcast is one made ... [i]n any ... judicial proceeding." Cal. Civ. Code § 47(b). As noted above, Section 47's litigation privilege is absolute and extends to cease-and-desist letters, demand letters, and communications with "some relation" to anticipated litigation. *Lerette*, 60

Cal. App. 3d at 577-78; *Leegin Creative Leather Products*, 1994 WL 761725, at *2; *Rubin*, 4

Cal. 4th at 1193-95; *Silberg*, 50 Cal. 3d at 215-16.

In *Leegin*, the defendant sent cease-and-desist letters to retailers who were selling a belt

buckle with a design that the defendant claimed was infringing on his copyrighted design. 1994

WL 761725, at *1. The plaintiff, who was the manufacturer of the belt buckles sold by the

retailers, filed a complaint against the defendant alleging, among other claims, tortious

interference. *Id.* The court granted defendant's motion to dismiss plaintiff's tortious interference

claim "because the letters are absolutely privileged under California Civil Code section 47(2)."

*Id.*, at *2. The court explained that "[t]he privilege extends to communications preliminary to a

judicial proceeding, including cease and desist letters of the type sent by [defendant]." *Id.*

This Court should similarly dismiss Plaintiff's Section 2202 claim for tortious

interference damages. Plaintiff admits that the only acts of the Executors for which Plaintiff

seeks damages in this case are the letters sent by the Executors to Plaintiff and Lightning in May

and June of 2014. (Rosenberg Decl., Ex. S [Markovich Depo. Tr. at 159:20-25]). All of the

letters sent by the Executors to Plaintiff and Lightning were sent in good faith and in anticipation

of litigation, and as part of their duties as Executors of the Estate. Indeed, "[a]n executor is an

officer of the court and occupies a fiduciary relation toward all parties having an interest in the

estate." *Estate of Sanders*, 40 Cal. 3d 607, 616 (1985) (internal citations and quotations omitted).

"A primary duty of the executor is to take reasonable steps to preserve the assets of the estate."

*Estate of Beach*, 15 Cal. 3d 623, 639 (1975).

The Estate's first letter, sent to Williams and Lightning on May 20, 2014, was based on

the Estate's knowledge from public sources about the Film and on the Estate's knowledge of

Jackson's custom and practice regarding video footage capturing his image. (Weitzman Decl.,

Ex. C; Rosenberg Decl., Ex. 15; Tavasci Decl., ¶¶ 3-5; Langford Decl., ¶¶ 4-6, 10-12). The

Estate's second letter, sent to Plaintiff on June 11, 2014, was informed by further investigation

into allegations set forth in Plaintiff's May 28, 2014 letter. (Weitzman Decl., Exs. D, E;

Rosenberg Decl., Exs. 16, 17; Langford Decl., ¶¶ 13-15, Ex. I). The Estate's final letters were

cease-and-desist letters sent to Lightning and Plaintiff on June 17 and 18, 2014, which mirror the

Executors' counterclaim and affirmative defenses in this case regarding the Photographs and the

Footage. (*Compare* Weitzman Decl., Exs. F, G *with* Rosenberg Decl., Ex. M at pp. 13-14 [¶¶ 84-

85], pp. 17-22 [¶¶ 8-33]). This Court denied Plaintiff's FRCP 12(b)(6) motion to dismiss these

claims and defenses by the Executors. (Rosenberg Decl., ¶ 7, Ex. O [Dkt. #65]). All of the letters

sent by the Executors were sent in good faith to fulfill their duties as Executors of the Estate and

to protect the assets of the Estate. (Langford Decl., ¶¶ 20-21; Weitzman Decl., ¶¶ 3, 9) Under

these circumstances, the letters sent by the Executors to Plaintiff and Lightning are absolutely

privileged under California Civil Code section 47(b), and thus Plaintiff's Section 2202 damages

claim fails as a matter of law.

> **3.    New York's Litigation Privilege And Plaintiff's Failure To Prove
> Wrongful Means Also Bar Plaintiff's Damages Claim.**

Even if the California litigation privilege does not apply, Plaintiff's Section 2202 claim

for tortious interference damages still fails as a matter of law because Plaintiff cannot show that

the Executors' conduct was "wrongful." Plaintiff admits that the only acts of the Executors for

which Plaintiff seeks damages in this case are the letters sent by the Executors to Plaintiff and

Lightning in May and June of 2014. (Rosenberg Decl., Ex. S [Markovich Depo. Tr. at 159:20-

25]).

To the extent Plaintiff is seeking damages for tortious interference with contractual

relations (*e.g.*, Plaintiff's Sales Agency Agreement with Lightning), *Bruce Lee Enterprises, LLC*

*v. A.V.E.L.A., Inc.*, 2013 WL 822173 (S.D.N.Y. Mar. 6, 2013) is on point. Plaintiff Bruce Lee Enterprises ("BLE") initiated a lawsuit against defendant A.V.E.L.A., Inc. ("AVELA") for right of publicity and intellectual property violations, and AVELA filed counterclaims against BLE. *Id.*, at *1. AVELA was selling posters, clothing, and merchandise containing photographs and images of the name and likeness of deceased martial arts and movie star Bruce Lee without the consent of BLE. *Id.*, at *3-4. BLE sent a cease-and-desist letter to one of AVELA's licensees, claiming the licensee infringed on BLE's rights by selling posters with Bruce Lee's image. *Id.*, at *5. The licensee subsequently cancelled its agreement with AVELA. *Id.*

AVELA filed a counterclaim against BLE for tortious interference with contractual relations based on BLE's cease-and-desist letter to the licensee. *Id.*, at *5, 24. BLE filed a motion for summary judgment on AVELA's tortious interference counterclaim. *Id.*, at *6. The court noted that "[w]hile the threat of litigation can give rise to a tortious interference claim, such threats are actionable only as intentional interference if they are 'wrongful.'" *Id.*, at *24 (citing *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75 (2d Cir. 1986)). The court explained that threats of litigation are "wrongful" only if "[1] the actor has no belief in the merit of the litigation, or, [2] even with such a belief, the actor nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication." *Bruce Lee Enterprises*, 2013 WL 822173, at *24 (internal citation and quotation omitted). The court found that BLE's cease-and-desist letter did not constitute "wrongful" conduct because "BLE sends countless cease-and-desist letters as part of its routine enforcement operations, and does so in a good faith effort to stop unauthorized use of Bruce Lee's likeness. Further, given that BLE has actually brought litigation to enforce its rights,

it seems clear that BLE believes in the merits of its case." *Id.* As a result, the court granted summary judgment in favor of BLE on AVELA's tortious interference counterclaim. *Id.*

*Bruce Lee Enterprises* is directly analogous to this case. Like BLE, the Estate has routinely enforced its rights against unauthorized uses of Michael Jackson's name, likeness, images, and intellectual property,[5] and against any violations of agreements regarding the same. (Langford Decl., ¶¶ 20-21; Weitzman Decl., ¶¶ 3, 9). The Estate had a clear understanding of Jackson's established custom and practice regarding video footage and photographs taken of him, and the Estate's letters to Plaintiff and Lightning in May and June of 2014 reflected that understanding. (Langford Decl., ¶¶ 4-6, 11-12, 15-16, 20-21; Tavasci Decl., ¶¶ 3-5; Weitzman Decl., ¶¶ 3, 9, Exs. C, E, F, G; Rosenberg Decl., Exs. 15, 17, 18). The Executors indeed pursued a counterclaim against Plaintiff based on its unauthorized exploitation of the Footage, which survived Plaintiff's motion to dismiss. (Rosenberg Decl., Ex. M at pp. 17-22 [¶¶ 8-33], Ex. O). The Executors also asserted affirmative defenses against Plaintiff based on its unauthorized use of the Photographs in the Film, which similarly survived Plaintiff's motion to dismiss.[6] (Rosenberg Decl., Ex. M at pp. 13-14 [¶¶ 84-85], Ex. O).

Moreover, the Executors have a duty to protect the assets, rights, and interests of the Estate, and the circumstances of Plaintiff's exploitation of the Footage five years after Jackson's death warranted the Estate's scrutiny and investigation into this matter. In fact, as set forth in Sections A and B above, Plaintiff has no admissible evidence that Muhammad ever owned the

---

[5] *See, e.g., Branca v. Mann*, 2012 WL 3263610, at *1 (C.D. Cal. Aug. 10, 2012).

[6] The Executors did not assert copyright infringement counterclaims based on the Photographs because the technical owners of those copyrights are Triumph and Optimum (who are wholly owned by the Estate), Plaintiff did not name Triumph and Optimum as parties in this lawsuit, Triumph and Optimum are California corporations not subject to this Court's jurisdiction, and Plaintiff denied that Triumph and Optimum are indispensable parties to this litigation. (Langford Decl., ¶¶ 17-19; Rosenberg Decl., Ex. N at p. 19 [Request Nos. 49-50]).

Footage or ever had the right to publicly and commercially exploit the Footage, further

validating the claims in the Estate's pre-litigation letters and its good faith contentions therein.

As in *Bruce Lee Enterprises*, the Executors clearly believe in the merits of their claims and

defenses, especially given that they have pursued them in this case and defeated Plaintiff's

motion to dismiss. As such, the Executors did not engage in "wrongful" conduct by sending their

pre-litigation letters to Plaintiff and Lightning in May and June of 2014.

Because there is no genuine dispute of these material facts, the Court should grant the

Executors' summary judgment motion in their favor on Plaintiff's Section 2202 claim. *See also*

*Officemax Inc. v. Cinotti*, 966 F. Supp. 2d 74, 80-81 (E.D.N.Y. 2013) ("justice will be properly

administered if the 'litigation privilege' extends to statements made before the commencement of

litigation, so long as the statements are pertinent to resolving the dispute"); *Front, Inc. v. Khalil*,

24 N.Y.3d 713, 719-20 (2015) ("we hold that statements made prior to the commencement of an

anticipated litigation are privileged, and that the privilege is lost where a defendant proves that

the statements were not pertinent to a good faith anticipated litigation").

To the extent Plaintiff seeks damages for tortious interference with ***prospective business***

***relations***, that claim also fails as a matter of law. Among other elements, this claim requires

proof that the "'defendant's conduct was motivated solely by malice or to inflict injury by

unlawful means, beyond mere self-interest or other economic considerations.'" *S&L Vitamins,*

*Inc. v. Australian Gold, Inc.,* 521 F. Supp. 2d 188, 217 (E.D.N.Y. 2007) (quoting *Shared*

*Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.,* 803 N.Y.S.2d 512, 513 (1st Dep't

2005)); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158 (2003)

(plaintiff must show "that the defendant engaged in an independently wrongful act" to prevail on

claims for tortious interference with prospective economic advantage). "[A]s a general rule, the

defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts . . . ." *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 190 (2004) (internal citation and quotations omitted).

For the same reasons noted above regarding Plaintiff's claim of interference with contractual relations, Plaintiff's claim for damages for interference with prospective business relations fails as a matter of law. The content of the Executors' pre-litigation letters to Plaintiff and Lightning, as well as the context and sequence in which they were sent, make clear that the Executors did not act for a wrongful purpose and did not use dishonest, unfair, or improper means when sending the letters. Whether the Executors' belief in the merits of their claims is ultimately challenged, there is no admissible evidence that the Executors sent the letters for the sole purpose of injuring Plaintiff; nor could there be since the Executors sent those letters in good faith. For this reason alone, Plaintiff's Section 2202 damages claim fails. *See also RFP LLC v. SCVNGR, Inc.,* 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (dismissing tortious interference claim where "only plausible inference to be made" was that defendants' decision to send cease-and-desist letter was "motivated at least in part by [defendants'] own economic interest"); *Radiancy, Inc. v. Viatek Consumer Prod. Grp. Inc.,* 138 F. Supp. 3d 303, 328 (S.D.N.Y. 2014) (letter notifying plaintiff of potential infringement cannot serve as basis for tortious interference claim where "there is nothing from the letter that indicates that the sole purpose behind [defendant's] action was malicious or that it used dishonest, unfair, or improper means").

The Executors have acted to protect the legal rights and economic interests of the Estate, and there is no evidence to dispute that their letters to Plaintiff and Lightning were motivated to

protect those rights and interests and were sent in good faith. Thus, the Executors' motion for summary judgment should be granted on Plaintiff's claim for damages under Section 2202.

**D.**      <u>**Plaintiff Cannot Prove The Essential Element Of Causation.**</u>

As noted previously, Plaintiff admits that the only acts of the Executors for which Plaintiff seeks damages in this case are the letters sent by the Executors to Plaintiff and Lightning in May and June of 2014. (Rosenberg Decl., Ex. S [Markovich Depo. Tr. at 159:20-25]). Plaintiff claimed in discovery that the Executors' letters caused Lightning to terminate its Sales Agency Agreement with Plaintiff. (Rosenberg Decl., Ex. 20 at ¶¶ 2, 7, Ex. 23 at pp. 3-9, Ex. R [Williams Depo. Tr. at 166:17-167:22, 185:18-186:19], Ex. S [Markovich Depo. Tr. at 116:6-117:7]). Yet there is no admissible evidence to dispute the material fact that ███████ ███████████████████████████████████████ ████████████████████████████████████ (Valle Decl., ¶ 3, Ex. B; Rosenberg Decl., Ex. 14).

"An essential element" of a claim for tortious interference with contractual relations "is that the breach of contract would not have occurred ***but for*** the activities of the defendant." *Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am.,* 749 N.Y.S.2d 249, 249 (1st Dep't 2002) (emphasis added); *see also Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 391 (2004) (intentional interference with contract, and intentional or negligent interference with prospective economic advantage "require the plaintiff to prove causation" to prevail). The same is true for claims of interference with prospective business relations. *Memnon v. Clifford Chance US, LLP,* 667 F. Supp. 2d 334, 349 (S.D.N.Y. 2009) (a plaintiff must show that she "would have entered into an economic relationship but for the defendant's wrongful conduct").

Where, as here, the evidence shows a third party terminated its agreement with the

plaintiff for reasons independent of the alleged tortfeasor's conduct, summary judgment is

properly granted. *See, e.g., Ullmannglass v. Oneida, Ltd.*, 121 A.D.3d 1371, 1373 (3d Dep't

2014) (summary judgment granted because "regardless of whether defendants acted in such a

manner as to interfere with the consulting contract, the [third party's] contract with Ullmann was

terminated for financial reasons").



(Valle Decl., ¶¶ 2-3, Ex. A at p. 2 [NWF000542], Ex. B; Rosenberg Decl., Ex. 13, Ex. 14, Ex. S

[Markovich Depo. Tr. at 91:21-92:11, 99:5-100:8]).

(Valle Decl., ¶ 3,

Ex. B; Rosenberg Decl., Ex. 14).

(*Id.*

[emphasis added]).

Because there is *no admissible evidence* to dispute the material fact that

Plaintiff

cannot prove the essential element of causation, and summary judgment should  be granted in

favor of the Executors on Plaintiff's Section 2202 damages claim.[7]

---

[7] Plaintiff also has not produced any evidence – and therefore cannot prove – that
Lightning's termination constitutes an "actual breach" for a tortious interference claim. *See
Women's Interart Ctr., Inc. v. N.Y. City Econ. Dev. Corp.*, 132 A.D.3d 442, 442-43 (2015) (no
"actual breach" where termination is valid).

**CONCLUSION**

For the foregoing reasons, the Executors respectfully request that the Court grant their motion for summary judgment or, in the alternative, summary adjudication, and that this Court grant the Executors any such and further relief as it deems just and proper.

Dated: April 28, 2017

Respectfully Submitted:

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

By:_____

Joshua M. Rosenberg (jrosenberg@kwikalaw.com)
 (*pro hac vice*)
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California  90401
Telephone: 310.566.9800
Facsimile: 310.566.9850


BLANK ROME LLP

Jerry D. Bernstein (JB7631) (jbernstein@BlankRome.com)
Rither Alabre (RA9280) (ralabre@BlankRome.com)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212.885.5000
Facsimile: 917.332.3766

Attorneys for Defendants and Counterclaimants John Branca
and John McClain, Executors of the Estate of Michael J. Jackson