UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

NOVAL WILLIAMS FILMS LLC,

                            Plaintiff,

        -against-

JOHN BRANCA and JOHN MCCLAIN,
EXECUTORS OF THE ESTATE OF MICHAEL J.
JACKSON,

                        Defendants.

Case No. 1:14-cv-04711-PAC

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW IN SUPPORT OF THE EXECUTORS' OPPOSITION TO
PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Howard Weitzman
 (*pro hac vice*)
Jeremiah T. Reynolds
 (*pro hac vice*)
Joshua M. Rosenberg
(*pro hac vice*)
KINSELLA WEITZMAN ISER KUMP &
ALDISERT LLP
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850
Email:  hweitzman@kwikalaw.com
      jreynolds@kwikalaw.com
      jrosenberg@kwikalaw.com

Jerry D. Bernstein (JB7631)
Rither Alabre (RA9280)
BLANK ROME LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: 212.885.5000
Facsimile: 917.332.3766
Email: jbernstein@BlankRome.com
      ralabre@BlankRome.com


*Attorneys for Defendants and Counterclaimants John Branca and John McClain,
Executors of the Estate of Michael J. Jackson*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF MATERIAL FACTS .............................................................................2

    A.    Plaintiff's Claims Regarding The Footage. ...........................................2

    B.    Discovery Relating To Muhammad. .......................................................3

    C.    The Muhammad Affidavit And Williams Affirmation. ..........................5

    D.    Michael Jackson's Custom And Practice Regarding Footage. ...............8

SUMMARY JUDGMENT STANDARD OF REVIEW ..................................................8

ARGUMENT .......................................................................................................................9

POINT ONE: PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE THE
MUHAMMAD AFFIDAVIT SHOULD BE EXCLUDED AND
DISREGARDED .................................................................................................9

    A.    The Muhammad Affidavit Should Be Excluded In Its Entirety Under
FRCP 37(c)(1). ..........................................................................................9

    B.    Alternatively, The Court Should Re-Open Discovery For The Executors
To Depose Witnesses Regarding The Muhammad Affidavit Before Ruling
On Plaintiff's Motion. ............................................................................14

    C.    Alternatively, Portions Of The Muhammad Affidavit Should Be Excluded
Under The "Dead Man's Statute." ..........................................................15

    D.    Alternatively, Portions Of The Muhammad Affidavit Should Be Excluded
Because Of Evidentiary Deficiencies. ...................................................17

POINT TWO:  PLAINTIFF'S MOTION SHOUD BE DENIED BECAUSE IT CANNOT
RELY ON THE STATUTORY PRESUMPTION OF COPYRIGHT
VALIDITY AND CANNOT PROVE CHAIN OF TITLE ................................18

    E.    Plaintiff Is Not Entitled To Rely On The Statutory Presumption Of
Copyright Validity Because The Copyright In The Footage Was Not
Registered Within Five Years Of Its First Publication. .........................18

    F.    Plaintiff Cannot Establish Chain Of Title To Prove It Has The Right To
Exploit The Footage. ...............................................................................19

POINT THREE:  OTHER GENUINE ISSUES OF MATERIAL FACT WARRANT
                      DENIAL OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
                      JUDGMENT ...................................................................................................21

     G.     There Are Genuine Issues Of Material Fact Regarding The Executors'
                      Counterclaim...............................................................................................21

     H.     There Are Genuine Issues Of Material Fact Regarding The Executors'
                      Affirmative Defenses To Plaintiff's Declaratory Relief Claim. ...........................23

CONCLUSION......................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>FEDERAL CASES</u>

*Am. Stock Exch., LLC v. Mopex, Inc.*,
    215 F.R.D. 87 (S.D.N.Y. 2002) ...................................................................... 10

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*,
    2016 WL 4991623 (S.D.N.Y. Sept. 16, 2016) ............................................... 12

*Baiul v. NBC Sports*,
    2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016) ................................................ 12

*Baumel v. Travelers Ins. Co.*,
    179 F. Supp. 88 (E.D.N.Y. 1959) ................................................................. 16

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006) .......................................................................... 24

*Brown v. Latin American Music Co., Inc.*,
    498 F.3d 18 (1st Cir. 2007) ........................................................................... 19

*Cameron v. City of N.Y.*,
    598 F.3d 50 (2d Cir. 2010) ............................................................................ 18

*Clark v. Meyer*,
    188 F. Supp. 2d 416 (S.D.N.Y. 2002) ....................................................... 9, 15

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006) .......................................................................... 10

*DiFrancesco v. Win-Sum Ski Corp.*,
    2017 WL 696838 (W.D.N.Y. Feb. 22, 2017) .................................................. 9

*Estate of Wooters ex rel. Klein v. Goujjane*,
    305 F. Supp. 2d 280 (S.D.N.Y. 2003) .......................................................... 22

*Gruen v. Gruen*,
    68 N.Y.2d 48 (1986) ..................................................................................... 22

*Krawec v. Kiewit Constructors Inc.*,
    2013 WL 1104414 (S.D.N.Y. Mar. 1, 2013) ................................................ 14

*Lebada v. N.Y. City Dep't of Educ.*,
    2016 WL 626059 (S.D.N.Y. Feb. 8, 2016) ................................................... 12

*Lujan v. Cabana Mgmt., Inc.*,
    284 F.R.D. 50 (E.D.N.Y. 2012) .................................................................... 10

*Macolor v. Libiran*,
    2015 WL 1262256 (S.D.N.Y. Mar. 19, 2015) ................................................................ 13

*Miller v. Wolpoff & Abramson, L.L.P.*,
    321 F.3d 292 (2d Cir. 2003) .......................................................................................... 8

*Motta v. Samuel Weiser, Inc.*,
    768 F.2d 481 (1st Cir.) .................................................................................................. 19

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
    269 F.3d 114 (2d Cir. 2001) .......................................................................................... 8

*Patterson v. Balsamico*,
    440 F.3d 104 (2d Cir. 2006) .......................................................................................... 10

*Playboy Enterprises, Inc. v. Dumas*,
    53 F.3d 549 (2d Cir. 1995) ............................................................................................ 21

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*,
    280 F.R.D. 147 (S.D.N.Y. 2012) .................................................................................. 10

*Rosenfeld v. Basquiat*,
    78 F.3d 84 (2d Cir. 1996) .............................................................................................. 15

*Sem–Torq, Inc. v. K Mart Corp.*,
    936 F.2d 851 (6th Cir. 1991) (same) ............................................................................ 19

*Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*,
    1997 WL 158364, 42 U.S.P.Q.2d (BNA) 1398 (S.D.N.Y. 1997) ................................. 19

*Wu v. Metro-N. Commuter R.R. Commuter R.R. Co.*,
    2016 WL 5793971 (S.D.N.Y. Aug. 4, 2016) ................................................................ 13

## FEDERAL STATUTES

17 U.S.C. § 410(c) ................................................................................................................ 19

Fed. R. Civ. P. 26 ............................................................................................................. 3, 9

Fed. R. Civ. P. 26(a)(1)(A)(i) ............................................................................................ 9

Fed. R. Civ. P. 37(c)(1) ..................................................................................................... 10

Fed. R. Civ. P. 56(c)(e) ................................................................................................. 9, 15

Fed. R. Evid. 601 ............................................................................................................... 15

Fed. R. Evid. 602 ............................................................................................... 18, 20, 21, 24

Fed. R. Evid. 701 ............................................................................................................... 18

Fed. R. Evid. 702 ............................................................................................................... 18

Fed. R. Evid. 704 ................................................................................................................ 18

Fed. R. Evid. 801 .......................................................................................................... 21, 24

Fed. R. Evid. 802 .......................................................................................................... 21, 24

Fed. R. Evid. 901 .................................................................................................. 18, 20, 24

**STATE STATUTES**

N.Y. CPLR 4519 ............................................................................................................ 15, 17

## PRELIMINARY STATEMENT

There are clearly genuine issues of disputed material facts that warrant the denial of Plaintiff Noval Williams Films LLC's ("Plaintiff") motion for partial summary judgment in its entirety. Plaintiff has engaged in a classic sandbagging of Defendants John Branca and John McClain, co-executors of the Estate of Michael Jackson (the "Executors" or the "Estate") by puporting to have suddenly discovered the heretofore missing witness Hasaun Muhammad and submitting an untested and preposterous affidavit from Muhammad in support of its motion. This is exactly the type of conduct the Federal Rules of Civil Procedure are designed to prevent. This Court should refuse to admit the Muhammad Affidavit and should not base a summary judgment ruling on this inadmissible document.

Plaintiff claims that Muhammad was the initial owner of the copyright in the footage (the "Footage") shown in Plaintiff's film, "Michael: The Last Photo Shoots" (the "Film") which is not supported by any admissible writing – in fact, as will be explained below, the most reasonable interpretation of the "Video/Photographic Work-For-Hire Agreement" indicates Muhammad was not "the Owner" of the Footage. Although the Executors have asked Plaintiff numerous times about locating Muhammad, to this date, Plaintiff has ***never*** provided Muhammad's contact information to the Executors nor made him available for deposition. Plaintiff brashly asks this Court to accept that it was simply fortunate timing that Muhammad unexpectedly surfaced and voluntarily provided Plaintiff a full affidavit to try and support its case after the discovery cut-off date, but fortunately just before the filing of Plaintiff's motion for summary judgment. Importantly, Craig Williams, who supposedly obtained the affidavit from Muhammad, does not claim in his own affirmation that he ever asked Muhammad to provide a valid address and contact information so that Muhammad could be further contacted by both sides. Plaintiff has still not provided any valid contact information for Muhammad nor shown it

1

has made any effort to have Muhammad disclose his current whereabouts, which indicates that Plaintiff was and still is attempting to hide Muhammad so as to prevent the Executors from contacting him and/or subpoenaing him for deposition or trial.

Not only are the circumstances surrounding the Muhammad Affidavit highly questionable, but the content itself defies credulity. Muhammad fails to provide any foundation or explanation as to how he knew Michael Jackson or why Jackson would give Muhammad, an apparent stranger, *carte blanche* to shoot private video footage of Jackson and "do whatever" Muhammad wanted to do with the Footage, for absolutely no consideration and in direct contravention of Jackson's well-established custom and practice regarding such footage. The threadbare and implausible nature of the Muhammad Affidavit should not be deemed sufficient to enter summary judgment on behalf of Plaintiff and should instead properly be tested by a trier-of-fact.

Based on the foregoing, and explained in greater detail below, there are clearly genuine issues of disputed material facts that warrant the denial of Plaintiff's motion in its entirety.

## STATEMENT OF MATERIAL FACTS

### A.    Plaintiff's Claims Regarding The Footage.

Plaintiff's Claim No. 1 seeks a declaration from this Court that Plaintiff can freely exploit the Footage (and the Film containing the Footage and certain photographs). (Rosenberg Decl., Ex. E at pp. 11-12). Plaintiff alleges the initial owner of the Footage was Muhammad and that Muhammad transferred ownership of the Footage to Craig J. Williams/Craig J. Williams Productions on or around May 21, 2013. (*Id*. at ¶ 44). Plaintiff alleges that Williams in turn transferred ownership of the Footage to Bonaventura Films, LLC, which granted an exclusive license to Plaintiff on November 1, 2013. (*Id*., at ¶¶ 45-46). Plaintiff concedes that Muhammad never registered the copyright in the Footage, that the Footage was first published in 2007, and

that the copyright in the Footage was not registered until August 15, 2014. (Rosenberg Decl., Ex. E at ¶ 17, Ex. 22 at p. 8 [Interrogatory No. 8], Ex. N [NWF000158-161], Ex. O [Williams Depo. Tr. at 182:11-183:7]), Ex. 34, Ex. P [Markovich Depo. Tr. at 186:20-188:21]). The only document Plaintiff relies on to assert Muhammad owned the Footage and could exploit it without Jackson's consent is a one page, purported "Video/Photographic Work-For-Hire Agreement" dated September 24, 2007 (the "2007 Agreement") allegedly signed by Muhammad and Matthew Akers. (Rosenberg Decl., Ex. E at ¶ 44, Ex. 5 at p. 7). ***Critically, the 2007 Agreement solely identifies Muhammad as the "Client" and not the "Owner" of the Footage at issue.*** (Rosenberg Decl., Ex. 5 at p. 7).

### B.    Discovery Relating To Muhammad.

On November 6, 2015, Plaintiff served its FRCP 26 initial disclosures on the Executors. (Rosenberg Decl., ¶ 17, Ex. 4). In its initial disclosures, Plaintiff listed Muhammad as a witness, and stated that "Plaintiff has requested the current address and telephone number for Mr. Muhammad from Mr. [Craig] Williams and shall provide as soon as Mr. Williams returns from China as he is the only individual related to Plaintiff that knows Mr. Muhammad." (Rosenberg Decl., ¶ 17, Ex. 4 at p. 3, Ex. O [Williams Depo. Tr. at 31:6-32:16]).

On November 13, 2015, the Executors served interrogatories on Plaintiff, which included an interrogatory that asked Plaintiff to "identify" each person with knowledge that Jackson allegedly "authorized" Muhammad to videotape the Footage, and "identify" was defined in the interrogatories to include that person's contact information. (Rosenberg Decl., Ex. G at p. 3 [paragraph 14], p. 6 [Interrogatory No. 7]). Plaintiff identified Muhammad in its response to this interrogatory but did not include his contact information. (Rosenberg Decl., Ex. 22 at p. 7).

On February 1, 2016, the Executors' counsel, Joshua Rosenberg, sent an email to Plaintiff's counsel, Michael Breslin, and Craig Williams and Raymond Markovich, asking them to provide Muhammad's contact information as they had promised to provide in Plaintiff's November 2015 initial disclosures. (Rosenberg Decl., Ex. H). Mr. Rosenberg explained that the Executors needed Muhammad's contact information "to serve a deposition subpoena upon him." (*Id*.). The same day, Markovich responded: "Craig: Can you please forward Muhammad's contact details?" (Rosenberg Decl., Ex. I). Williams never did. (Rosenberg Decl., ¶ 8). Markovich then responded by providing an address for Muhammad's company that Markovich found on New York's public secretary of state website, and Markovich stated "[t]hat address is a single family townhouse and must be his residence."[1] (Rosenberg Decl., Ex. J).

Two days later, on February 3, 2016, Mr. Rosenberg and Mr. Breslin had a "meet and confer" telephone call, where Mr. Breslin told Mr. Rosenberg that Plaintiff "was having a hard time finding" Muhammad. (Rosenberg Decl., ¶ 10, Ex. L). Thereafter, the Executors' counsel retained a private investigator and employed other investigative methods and determined that the address provided by Plaintiff and Markovich for Muhammad was not genuine. (Rosenberg Decl., ¶ 11). The Executors were able to locate a possible telephone number for Muhammad, which Mr. Rosenberg called numerous times but no one ever answered and the voicemail was "full" so a message could not be left. (*Id*.). The Executors could not locate any address for Muhammad that proved valid. (*Id*.). Over the course of a year, the Executors could not independently locate or verify any valid address and telephone number for Muhammad. (*Id*.).

---

[1] Plaintiff provided the same address for Muhammad in its second amended interrogatory responses. (Rosenberg Decl., Ex. K at p. 4). Markovich later admitted in deposition that Muhammad did not live there. (Rosenberg Decl., Ex. P [Markovich Depo. Tr. at 57:20-58:10]).

The Executors then took the depositions of Craig Williams and Raymond Markovich in January 2017, less than one month before the close of deposition discovery.[2] (Rosenberg Decl., ¶ 14). At their January 2017 depositions, Williams and Markovich testified that they did not have Muhammad's contact information and that ***Plaintiff did not intend to depose Muhammad or call him as a witness at trial.*** (Rosenberg Decl., Ex. O [Williams Depo. Tr. at 30:22-24, 31:25-32:16, 36:15-37:13, 94:23-95:22, 98:11-99:1, 100:7-19], Ex. P [Markovich Depo. Tr. at 57:10-19]). Williams also testified and disclosed ***for the first time*** that his only possible point of contact with Muhammad was through someone named "Nut Farrakhan" who is allegedly the son of Louis Farrakhan and associated with the Nation of Islam. (Rosenberg Decl., Ex. O [Williams Depo. Tr. at 26:12-21, 29:6-12, 41:1-42:7, 54:15-56:12, 72:9-15, 94:23-95:22, 99:10-100:19]). Williams provided an alleged telephone number for "Nut Farrakhan" but did not provide an address for "Nut Farrakhan." (Rosenberg Decl., Ex. O [Williams Depo. Tr. at 99:10-100:19]).

After Williams' deposition, the Executors could not verify that a person named "Nut Farrakhan" even exists. (Rosenberg Decl., ¶ 23). Mr. Rosenberg has also called the telephone number provided by Williams in his deposition for "Nut Farrakhan" and left a voicemail, but "Nut Farrakhan" never returned Mr. Rosenberg's call. (*Id.*).

## C.    The Muhammad Affidavit And Williams Affirmation.

Deposition discovery closed on February 13, 2017, and fact discovery closed on March 14, 2017. (*See* Dkt. #94, 95). Muhammad was never deposed in this case. (Rosenberg Decl., ¶ 17). Plaintiff never offered to make Muhammad available for deposition, nor supplemented its

---

[2] Both Williams and Markovich appeared for deposition in their personal capacities and as Plaintiff's designees pursuant to FRCP 30(b)(6). (Rosenberg Decl., ¶¶ 15-16, Ex. O [Williams Depo. Tr. at 11:14-23], Ex. P [Markovich Depo. Tr. at 9:5-11:19]).

FRCP 26 disclosures or discovery responses to provide contact information for Muhammad. (Rosenberg Decl., ¶ 24).

On April 28, 2017, Plaintiff filed its cross-motion for partial summary judgment. (*See* Dkts. #110-116). In support of its motion, ***Plaintiff submitted an affidavit from Muhammad***. (See Dkt. #113). This was the ***first time*** since Plaintiff served its November 2015 initial disclosures that the Executors were made aware that Plaintiff had contacted Muhammad. (Rosenberg Decl., ¶ 25). In his Affidavit, Muhammad purports to authenticate the 2007 Agreement, and attests that Michael Jackson allowed him to shoot the Footage. (Muhammad Affidavit, ¶¶ 1-10). Muhammad also attests that Jackson told Muhammad "that I could do whatever I wanted with the photographs and video footage . . . ." (Muhammad Affidavit, ¶ 9). Notably, the Muhammad Affidavit does not contain Muhammad's current address and telephone number or any other contact information, nor does it indicate where Muhammad signed the affidavit, except for a purported notary stamp and signature from a person named "Stephanie Benjamin" in Kings County, New York. (Rosenberg Decl., ¶ 26).

Plaintiff's April 28, 2017 motion also includes an affirmation from Craig Williams (the "Williams Affirmation"). (*See* Dkt. # 114). In his Affirmation, Williams attempts to explain Plaintiff's belated acquisition of the Muhammad Affidavit, but Williams' explanation defies credulity. Williams attests that, after his deposition in January 2017, he contacted the Nation of Islam in Chicago to help contact Muhammad.[3] (Williams Affirmation, ¶ 24). For three months Williams supposedly heard nothing back about Muhammad's whereabouts. Then, remarkably, on April 13, 2017, "Nut Farrakhan" allegedly called Williams out of the blue with Muhammad

---

[3] In allegedly making successful contact with Muhammad, Williams does ***not*** attest that he used the alleged telephone number for "Nut Farrakhan" that Williams provided in his January 2017 deposition. (Williams Affirmation, ¶ 24).

on the phone. (*Id.*, ¶ 25). "Nut Farrakhan" supposedly told Williams that Muhammad was in *London*. (*Id.*). During the call, Williams allegedly "explained that we had wanted to depose Muhammad but it was now too late and requested an affidavit from him." (*Id.*). Muhammad allegedly agreed during that call to provide an affidavit to Williams. (*Id.*)

Despite allegedly having this call with Muhammad on April 13, 2017, Plaintiff never informed the Executors that Williams had spoken to Muhammad, never supplemented its FRCP 26 disclosures or interrogatory responses, and never asked the Executors for their consent to submit a request to the Court to re-open discovery for the purpose of taking Muhammad's deposition. (Rosenberg Decl., ¶ 27). Instead, Plaintiff sat on this information for more than two weeks and then filed its motion, relying principally on the Muhammad Affidavit. Notably, the Williams Affirmation does not include Muhammad's contact information, or even mention if Williams asked Muhammad for his contact information. (*See generally* Williams Affirmation).

On its face, the Williams Affirmation raises further troubling issues about the circumstances surrounding the Muhammad Affidavit. How is it that "Nut Farrakhan" and Muhammad miraculously called Williams three months after Williams supposedly contacted the Nation of Islam for assistance in locating Muhammad, and after the close of discovery but shortly before summary judgment motions were due? How was the Muhammad Affidavit created? How was Muhammad's executed affidavit returned to Plaintiff and where is the original? Where is Muhammad currently located?

Given these glaring issues and the fact that the Executors have never had the opportunity to speak with or depose Muhammad and test his credibility, the Executors immediately raised these issues with the Court, requesting a motion to strike the Muhammad Affidavit. (*See* Dkt. #117). Plaintiff responded that the Executors should already have Muhammad's contact

information from alleged discussions between the Executors and Muhammad's attorney in 2011-2012, but the Executors do not have that information. (*See* Dkt. #118; Rosenberg Decl., ¶ 28).

### D. <u>Michael Jackson's Custom And Practice Regarding Footage.</u>

The Muhammad Affidavit is completely devoid of any foundation or explanation of how or why Michael Jackson supposedly (1) allowed Muhammad – an apparent stranger to Jackson – to shoot private video footage of Jackson at a photo shoot (including in Jackson's private dressing room); and (2) told Muhammad that he "could do whatever" he wanted with the resulting Footage, even though it contained it extremely private moments that Jackson otherwise sought to shield from the public throughout his life. (Muhammad Affidavit, ¶¶ 8-10).

Indeed, Michael Jackson's custom and practice had been at all material times (including in 2007) to control ownership and exploitation of video footage and photographs taken of him in a private setting. (Declaration of Evvy Tavasci ["Tavasci Decl."], ¶¶ 3-5; Declaration of Karen Langford ["Langford Decl."], ¶¶ 4-6, 11). Jackson's custom and practice was that such footage was shot either as a work-for-hire for Jackson, or subject to a nondisclosure agreement with Jackson (or both), and such footage could not be publicly and commercially exploited without Jackson's prior approval, consent, and/or involvement. (Tavasci Decl., ¶ 4; Langford Decl., ¶¶ 4-6, 11).

### <u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>

"On a motion for summary judgment, all factual inferences must be drawn in favor of the non-moving party." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). "Summary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* "It is appropriate for a district court ruling on summary judgment to consider only admissible evidence." *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001).

*See also* Fed. R. Civ. P. 56(c), (e); *Clark v. Meyer*, 188 F. Supp. 2d 416, 419 (S.D.N.Y. 2002)

("the Court may consider only admissible evidence" in ruling on a summary judgment motion).

## ARGUMENT

### POINT ONE: PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE THE MUHAMMAD AFFIDAVIT SHOULD BE EXCLUDED AND DISREGARDED

#### A.   The Muhammad Affidavit Should Be Excluded In Its Entirety Under FRCP 37(c)(1).

FRCP 26(a)(1)(A)(i) requires a party to disclose during discovery "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses," unless that individual would be used solely for the purposes of impeachment. FRCP 26(e)(1)(A), in turn, requires a party to supplement initial disclosures and interrogatory responses in a timely manner should the party discover that they were incorrect or incomplete. "The duty to supplement continues *even after the discovery period has closed*." *DiFrancesco v. Win-Sum Ski Corp.*, 2017 WL 696838, at *5 (W.D.N.Y. Feb. 22, 2017) (emphasis added).

Plaintiff has never supplemented its FRCP 26 initial disclosures or interrogatory responses to include Muhammad's current address and telephone number, even though Plaintiff has, by its own admission, spoken to Muhammad as recently as April 13, 2017. (Rosenberg Decl., ¶ 27; Williams Affirmation, ¶ 25). Williams does not claim he asked Muhammad for his contact information when they allegedly spoke. (Williams Affirmation, ¶ 25).

Plaintiff will incorrectly argue that Williams' belated identification of "Nut Farrakhan" as a point of contact for Muhammad in Williams' January 2017 deposition constituted a sufficient supplemental disclosure. Williams provided only a telephone number (not an address) for "Nut Farrakhan," and the Executors called this number and "Nut Farrakhan" never returned the call.

(Rosenberg Decl., ¶ 23, Ex. O [Williams Depo. Tr. at 99:10-100:2]). Moreover, courts have found that the mere mention of a person's name in deposition (in this case, "Nut Farrakhan") to be insufficient to satisfy FRCP 26. *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 72 (E.D.N.Y. 2012) ("the mere mention of a name in a deposition or interrogatory response is insufficient to satisfy" FRCP 26). Thus, Plaintiff has violated its obligation to supplement under FRCP 26.

Where, as here, a party fails to provide the relevant information for any potential witness, "the party is not allowed to use that information or witness to supply evidence ***on a motion***, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). "The burden to prove substantial justification or harmlessness rests with the dilatory party," who, in this case, is Plaintiff. *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002). "The purpose of Rule 37(c) is to prevent the practice of 'sandbagging' an adversary with new evidence." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (internal citations omitted). When determining whether to preclude evidence pursuant to FRCP 37(c)(1), courts in the Second Circuit consider four factors: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). A showing of "bad faith" is ***not*** required to exclude evidence pursuant to FRCP 37(c)(1). *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).

Each of the *Patterson* factors is met here and requires exclusion of the Muhammad Affidavit under FRCP 37(c)(1). First, Plaintiff has no valid explanation for its failure to comply with FRCP 26. Williams testified in his January 2017 deposition that the "only way" he was ***ever***

able to contact Muhammad was through "Nut Farrakhan" at the Nation of Islam. (Rosenberg Decl., Ex. O [Williams Depo. Tr. at 26:12-24, 41:1-42:7, 54:15-20, 72:9-15, 100:3-6]). Despite the fact that Williams knew this alleged point of contact before the litigation even began in 2014, Plaintiff never provided this information in its November 2015 initial disclosures (which falsely stated that Williams had Muhammad's address and telephone number and would provide it). (Rosenberg Decl., ¶ 17, Ex. 4 at p. 3, Ex. O [Williams Depo. Tr. at 31:6-32:16]). Plaintiff then went on to (a) deliberately provide the Executors with false contact information for Muhammad, (b) repeatedly claim during discovery that Plaintiff "couldn't find Muhammad" and did not know how to contact him, (c) never provide this "Nut Farrakhan" information in its FRCP 26 disclosures or interrogatory responses, and (d) only reveal this "Nut Farrakhan" information upon questioning at Williams' January 2017 deposition, less than one month before the close of deposition discovery. (Rosenberg Decl., ¶¶ 6-11, 23-27).

The record clearly demonstrates that Plaintiff deliberately concealed its alleged point of contact with Muhammad – "Nut Farrakhan" – for more than a year into discovery, leaving the Executors little to no time to follow up on this information (which, based on the failure of "Nut Farrakhan" to return the Executors' call, should cause this Court to question the validity of this information). And, as described in detail above, the Williams Affirmation does not explain how Plaintiff was miraculously able to contact Muhammad (without a subpoena) after the discovery cutoff but just in the nick of time to obtain and submit the Muhammad Affidavit with Plaintiff's motion. As further evidence of Plaintiff's deception, both Williams and Markovich testified that *Plaintiff did not intend to call Muhammad as a witness at trial*. (Rosenberg Decl., Ex. O.

[Williams Depo. Tr. at 100:7-19]; Ex. P [Markovich Depo. Tr. at 57:10-19]). Thus, this first factor weighs heavily in favor of excluding the Muhammad Affidavit.[4]

The second factor – the importance of the witness's testimony – also favors exclusion of the Muhammad Affidavit. As described above and below, Plaintiff's motion hinges entirely on the Muhammad Affidavit, as he is Plaintiff's only witness to allegedly provide competent testimony to authenticate the 2007 Agreement and that Michael Jackson allegedly allowed Muhammad to shoot the Footage and "do whatever" Muhammad wanted to do with the Footage. (Muhammad Affidavit, ¶¶ 1-10). "[T]he greater the importance of a witness, the more prejudice is suffered by the defendants by not having had the opportunity to depose that witness . . . ." *Lebada v. N.Y. City Dep't of Educ.*, 2016 WL 626059, at *6 (S.D.N.Y. Feb. 8, 2016).

As such, the third factor – the prejudice suffered by the Executors if the Muhammad Affidavit is not excluded – weighs heavily in favor of its exclusion. Given Plaintiff's flagrant violation of FRCP 26 and concealment of its ***only*** alleged point of contact with Muhammad (the Nation of Islam), and given the Executors' exhaustive and unsuccessful efforts to locate Muhammad, the Executors will be clearly prejudiced if the Muhammad Affidavit is not excluded. The Executors have not had the opportunity to speak with or depose Muhammad, and

---

[4] The Court should note that Plaintiff has admitted that one of its members, Victorino Noval, is a convicted felon who served time in prison for criminal fraud. (Rosenberg Decl., Ex. P [Markovich Depo. Tr. at 32:7-18]). Furthermore, Raymond Markovich, one of Plaintiff's managers, has been repeatedly sanctioned and admonished in the Southern District of New York for bad faith conduct. *See Baiul v. NBC Sports*, 2016 WL 1587250, at *15-16 (S.D.N.Y. Apr. 19, 2016) (sanctioning Markovich because "[i]f ever this Court has witnessed attorney conduct more vexatious and harassing or deserving of § 1927 sanctions, the Court has difficulty in recalling that occasion"); *Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, 2016 WL 4991623, at *23-24 (S.D.N.Y. Sept. 16, 2016) ("the Court believes that defense counsel Markovich acted in bad faith and in a manner that improperly lengthened the proceedings in this litigation"), *reconsideration granted in part*, 2017 WL 1653568 (S.D.N.Y. May 2, 2017). Given the checkered past of Plaintiff's members and managers, it should come as no surprise that Plaintiff would engage in this "rope-a-dope" maneuver with respect to the Muhammad Affidavit.

test his credibility, and Plaintiff asks this Court to dispose of most of the claims in this case on a pre-trial motion based primarily on the Muhammad Affidavit. Plaintiff's discovery abuses and the Executors' resulting inability to depose Muhammad before this motion warrant the exclusion of his affidavit. *See Wu v. Metro-N. Commuter R.R. Commuter R.R. Co.*, 2016 WL 5793971, at *9 (S.D.N.Y. Aug. 4, 2016) ("Defendants argue that they would be prejudiced by the lack of opportunity to depose the Declarants and to examine whether they are indeed qualified to testify on the subjects for which they are being proffered. The Court agrees, and finds that the third factor weighs in favor of preclusion").

The fourth favor – permitting a continuance – weighs in favor of exclusion because ***to this day*** Plaintiff has not provided Muhammad's current address and telephone number, despite the fact that Williams apparently spoke to Muhammad on April 13, 2017, yet Williams did not provide (and apparently did not ask for) Muhammad's contact information. (Williams Affirmation, ¶ 25). Absent Plaintiff producing Muhammad for deposition (which Plaintiff refuses to do), a continuance will not obviate the necessity of excluding the Muhammad Affidavit. *Macolor v. Libiran*, 2015 WL 1262256, at *2-3 (S.D.N.Y. Mar. 19, 2015) (excluding witnesses under FRCP 37(c)(1) for failure to provide contact information and denying request to reopen discovery).

The foregoing factors warrant the exclusion of the Muhammad Affidavit.[5] Plaintiff's conduct regarding the location and contact information of Muhammad has been deceptive and misleading, or at a minimum, inexcusably dilatory. Because the Muhammad Affidavit should be excluded, the Court should deny Plaintiff's motion in its entirety because Plaintiff has no

---

[5] On May 5, 2017, the Executors requested a pre-motion conference on a motion to strike the Muhammad Affidavit. (*See* Dkt. #117). On May 17, 2017, the Court set the pre-motion conference for June 1, 2017, two days after this Opposition brief is due, and the Executors cannot file the motion to strike before the pre-motion conference pursuant to this Court's rules.

admissible evidence to prove chain of title to exploit the Footage, and Plaintiff cannot rely on the statutory presumption of validity, discussed in Sections E and F, *infra*.

 **B.**  **Alternatively, The Court Should Re-Open Discovery For The Executors To Depose Witnesses Regarding The Muhammad Affidavit Before Ruling On Plaintiff's Motion.**

 Should the Court decline to exclude the Muhammad Affidavit, case law is clear that the Court should re-open discovery to permit the Executors to depose Muhammad. In *Krawec v. Kiewit Constructors Inc.*, 2013 WL 1104414 (S.D.N.Y. Mar. 1, 2013), the court found that the plaintiff violated FRCP 26 by failing to provide the contact information of a witness (Frey) in its FRCP 26 disclosures. *Id.*, at *7. The defendant had moved to exclude the plaintiff's inclusion of a declaration of Frey in plaintiff's summary judgment opposition. *Id.*, at *6. Unlike the Executors, the defendant in *Krawec* had not requested any information relating to Frey. *Id.*, at *7. The court declined to exclude the Frey declaration, and instead ordered that discovery be re-opened to give the defendant the opportunity to depose Frey before ruling on the parties' respective summary judgment motions. *Id.*, at *8. However, the court explained: "If Plaintiff fails to provide access to [Frey], this Court will strike the Frey Declaration and grant summary judgment in favor of Defendant . . . ." *Id*.

 Similarly, here, the Court ***at a minimum*** should order Plaintiff to make Muhammad available for deposition and provide his current contact information (including his current address and telephone number) before ruling on Plaintiff's motion. If Plaintiff fails to do so, then the Court should exclude the Muhammad Affidavit in its entirety. Given the suspicious circumstances surrounding the acquisition of the Muhammad Affidavit, the Court should also order Plaintiff to produce Craig Williams for deposition, and provide the current address and telephone number for "Nut Farrakhan," so that the Executors may take their depositions regarding the circumstances of the Muhammad Affidavit. Given Plaintiff's clear discovery

abuses, it would be unfair and extremely prejudicial to the Executors for the Court to rely upon the Muhammad Affidavit without affording the Executors the opportunity to depose Muhammad.

### C.   Alternatively, Portions Of The Muhammad Affidavit Should Be Excluded Under The "Dead Man's Statute."

New York's "Dead Man's Statute," N.Y. CPLR 4519, makes inadmissible all alleged statements by Michael Jackson in the Muhammad Affidavit. Although the Federal Rules of Evidence abolished many common-law rules governing witness competency, they expressly provide that state law determines what rules will apply in civil actions governed by state law. *See* Fed. R. Evid. 601. "Because state law supplies the rules in diversity-of-citizenship cases, New York law, including its statute barring the testimony of certain interested witnesses, must be given effect." *Rosenfeld v. Basquiat*, 78 F.3d 84, 88 (2d Cir. 1996) (internal citation omitted). This Court has jurisdiction, in part, based on diversity, and this Court has already ruled that the Executors' counterclaim for declaratory relief sounds in contract, not copyright, thus invoking New York state substantive law. (Rosenberg Decl., Ex. M at 1-2 [Dkt. #65] [stating "the Court construes the counterclaim, which alleges Jackson entered into an oral agreement with the filmmakers restricting his use of the footage, as sounding in contract . . . ."], Ex. F at p. 16, ¶ 3 [the Executors' counterclaims invoking diversity jurisdiction under 28 U.S.C. § 1332(a)]).

Moreover, FRCP 56(e) "requires exclusion of evidence on summary judgment motions which the dead man's statute would exclude at trial." *Clark v. Meyer*, 188 F. Supp. 2d 416, 420-22 (S.D.N.Y. 2002) (holding that "the New York dead man's statute applies here . . . Ms. Clark's account of her personal conversations with the late Ms. Meyer is not admissible and therefore not properly considered on this motion").

New York's Dead Man's Statute, N.Y. CPLR 4519, provides, in relevant part, that:

> Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under

whom such a party or interested person derives his interest or title by assignment
or otherwise, shall not be examined as a witness in his own behalf or interest, or
in behalf of the party succeeding to his title or interest against the executor,
administrator or survivor of a deceased person . . . concerning a personal
transaction or communication between the witness and the deceased person . . .
except where the executor, administrator, [or] survivor . . . is examined in his own
behalf, or the testimony of the . . . deceased person is given in evidence,
concerning the same transaction or communication . . . .

Muhammad is clearly incompetent to testify under the Dead Man's Statute because he is
"a person from, through or under whom such a party or interested person derives his interest or
title by assignment." It is Muhammad who allegedly transferred the copyright in the Footage to
Williams' companies, who then licensed the Footage to Plaintiff. Muhammad is also separately
covered under the statute as a "person interested in the event." Under the Dead Man's Statute,
"[a] person interested in the event is one who will either gain or lose by direct legal operation of
judgment, or against whom the record would constitute legal evidence." *Baumel v. Travelers Ins.
Co.*, 179 F. Supp. 88, 89 (E.D.N.Y. 1959).

Williams testified that Muhammad is credited as a producer on the Film, so Muhammad
obviously stands to gain from a judgment in favor of Plaintiff because Plaintiff will be able to
exploit the Film with the Footage and Muhammad will derive credit therefrom. (Rosenberg
Decl., Ex. O [Williams Depo. Tr. at 52:8-10]). Markovich further testified that Muhammad is to
receive "points" on the Film, *i.e.*, a percentage of monies that Plaintiff receives from the Film,
and that there is a "back-end deal" between Muhammad and Williams relating to the Film.
(Rosenberg Decl., Ex. P [Markovich Depo. Tr. at 75:12-76:12]). Thus, Muhammad stands to
gain from a judgment in favor of Plaintiff because Muhammad will receive monetary
compensation if this Court finds that Plaintiff is entitled to exploit the Film with the Footage.

Because the Dead Man's Statute clearly applies to Muhammad, and because the
Executors have not introduced any testimony from Jackson or the Executors about the alleged

transaction between Muhammad and Jackson during the 2007 photo shoots, the following statements in the Muhammad Affidavit are inadmissible and should be excluded under N.Y. CPLR 4519: (1) ". . . and Jackson consented to be photographed/video graphed" (Muhammad Affidavit, ¶ 6); (2) "Jackson consented to be photographed/video graphed and stated that I could do whatever I wanted with the photographs and video footage photographed and taken by my Videographer whom I paid" (Muhammad Affidavit, ¶ 9); and (3) "There were no limitations placed by Jackson on my right to exploit the Footage" (Muhammad Affidavit, ¶ 10).

Because these alleged statements by Jackson in the Muhammad Affidavit are inadmissible, there is a genuine dispute of material fact as to whether Muhammad (and now Plaintiff, via alleged transfers and licenses) can or cannot exploit the Footage "without the Estate's approval, consent, and/or involvement," as set forth in the Executors' counterclaim. (Rosenberg Decl., Ex. F at p. 22, ¶ 33). Accordingly, the Court should deny Plaintiff's motion for partial summary judgment in its entirety.

### D. Alternatively, Portions Of The Muhammad Affidavit Should Be Excluded Because Of Evidentiary Deficiencies.

Other portions of the Muhammad Affidavit defy the rules of evidence or, at a minimum, create a genuine dispute of material fact that warrants denial of Plaintiff's motion. In his affidavit, Muhammad claims he was not an employee of Jackson, had no work-for-hire agreement with Jackson, and was not paid by Jackson. (Muhammad Affidavit, ¶ 8). Yet, Muhammad claims that Jackson "consented" to the Footage being taken of him and that Jackson told Muhammad that Muhammad "could do whatever" he wanted with the Footage. (Muhammad Affidavit, ¶ 9). Muhammad provides no explanation in his affidavit for why Jackson would allow Muhammad – an apparent stranger to Jackson – to profit off Jackson's image and privacy, in direct contravention of Jackson's established custom and practice. (*See* Tavasci Decl., ¶¶ 3-5;

Langford Decl., ¶¶ 4-6, 11). In addition to this lack of foundation, Muhammad's testimony about Jackson's purported "consent" regarding Muhammad's alleged right to exploit the Footage calls for an improper legal conclusion and is inadmissible. Fed. R. Evid. 701, 702, 704; *Cameron v. City of N.Y.*, 598 F.3d 50, 62 (2d Cir. 2010) ("witnesses may not present testimony in the form of legal conclusions").

Moreover, Muhammad's purported attempt to authenticate Matthew Akers' signature on the 2007 Agreement is inadmissible. (Muhammad Affidavit, ¶ 4). The Muhammad Affidavit does not include ***any*** testimony that Muhammad personally witnessed Matthew Akers sign the 2007 Agreement, or that Muhammad is sufficiently familiar with Akers' handwriting such that Muhammad can authenticate Akers' signature. *See* Fed. R. Evid. 602, 901. Therefore, the Muhammad Affidavit is not competent evidence to authenticate the signature of Matthew Akers on the 2007 Agreement. Because Plaintiff has provided no admissible evidence to authenticate Matthew Akers' signature on the 2007 Agreement, the Court should exclude the 2007 Agreement (which is attached as Exhibit A to the Muhammad Affidavit and as the last page of Exhibit D to the Williams Affirmation) and therefore deny Plaintiff's motion (which, as explained below, is entirely dependent on the admissibility of the 2007 Agreement).

**POINT TWO:  PLAINTIFF'S MOTION SHOUD BE DENIED BECAUSE IT CANNOT RELY ON THE STATUTORY PRESUMPTION OF COPYRIGHT VALIDITY AND CANNOT PROVE CHAIN OF TITLE**

**E.    Plaintiff Is Not Entitled To Rely On The Statutory Presumption Of Copyright Validity Because The Copyright In The Footage Was Not Registered Within Five Years Of Its First Publication.**

Plaintiff's Claim No. 1 seeks a declaration from this Court that Plaintiff can freely exploit the Footage. (Rosenberg Decl., Ex. E at pp. 11-12). Plaintiff attempts to rely upon the statutory presumption of ownership afforded by Bonaventura Films' copyright registration of the Footage. (*See* Plaintiff's Memo of Law at 8-9). However, the Copyright Act provides that "[i]n any

judicial proceedings the certificate of a registration **_made before or within five years after first_**

**_publication of the work_** shall constitute prima facie evidence of the validity of the copyright and

of the facts stated in the certificate. The evidentiary weight to be accorded to the certificate of a

registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c)

(emphasis added).

      Plaintiff admits the Footage was first published in 2007, but the copyright in the Footage

was not first registered until August 15, 2014, **_more than five years after its first publication_**.

(Rosenberg Decl., Ex. E at ¶ 23, Ex. 22 at p. 8 [Interrogatory No. 8], Ex. N [NWF000158-161],

Ex. 34, Ex. P [Markovich Depo. Tr. at 184:14-25, 186:10-188:21]). Thus, Plaintiff is not entitled

to benefit from the prima facie presumption of ownership under the Copyright Act because

registration did not occur within five years of first publication. *Tuff 'N' Rumble Mgmt., Inc. v.

Profile Records, Inc.*, 1997 WL 158364, 42 U.S.P.Q.2d (BNA) 1398 (S.D.N.Y. 1997) (no prima

facie presumption of ownership because copyright registration occurred more than five years

after first publication); *Brown v. Latin American Music Co., Inc.*, 498 F.3d 18, 24 (1st Cir. 2007)

(same); *Sem–Torq, Inc. v. K Mart Corp.*, 936 F.2d 851, 854 (6th Cir. 1991).

    **F.**    **<u>Plaintiff Cannot Establish Chain Of Title To Prove It Has The Right To
Exploit The Footage.</u>**

      The Court should refuse to accord any evidentiary weight to the copyright registration of

the Footage by Bonaventura Films. This is especially true given that Plaintiff cannot establish

chain of title to prove its alleged right to exploit the Footage. Where, as here, "a plaintiff is not

the author of the copyrighted work then he or she must establish a proprietary right through the

chain of title in order to support a valid claim to the copyright." *Motta v. Samuel Weiser, Inc.*,

768 F.2d 481, 484 (1st Cir.), cert. denied 474 U.S. 1033, 106 S.Ct. 596, 88 L.Ed.2d 575 (1985)

(cites omitted).

Plaintiff alleges that Muhammad was the initial owner of the Footage and that Muhammad transferred ownership of the Footage to Craig J. Williams/Craig J. Williams Productions on or around May 21, 2013. (Rosenberg Decl., Ex. E at ¶ 44). Plaintiff alleges that Williams in turn transferred ownership to Bonaventura Films, LLC, which allegedly granted an exclusive license to Plaintiff on November 1, 2013. (*Id*., at ¶¶ 45-46).

Because the Muhammad Affidavit is inadmissible (either in whole or at least in relevant part), Plaintiff has no admissible evidence that Muhammad ever owned the Footage. Plaintiff cannot rely on the 2007 Agreement to prove it can exploit the Footage because Plaintiff cannot authenticate the document (or both of its signatures) and Plaintiff has no personal knowledge regarding the negotiation, creation, and execution of the document. (Rosenberg Decl., Ex. O [Williams Depo. Tr. at 11:14-23, 44:3-25, 49:15-17, 57:5-17, 70:4-71:21, 87:8-95:22, 103:6-17, 103:25-104:2, 182:11-185:17], Ex. P [Markovich Depo. Tr. at 9:5-11:19, 22:1-18, 69:23-70:8, 76:22-77:18, 217:1-220:2]). Also, as discussed *supra* in Section D, the Muhammad Affidavit (even if it is admissible, and it is not) is not competent evidence to authenticate Matthew Akers' alleged signature on the 2007 Agreement. Thus, the 2007 Agreement is inadmissible, has no evidentiary value, and should be disregarded by this Court.  Fed. R. Evid. 901 and 602.

Even if the 2007 Agreement were somehow admissible (it is not), that alleged agreement does not prove that Muhammad ever owned the Footage. The 2007 Agreement makes no reference whatsoever to the "work" being commissioned. (Rosenberg Decl., ¶ 18, Ex. 5 at p. 7). There is no mention of Michael Jackson nor the photo shoots that are the subject of the Footage. (*Id*.) As such, even if the 2007 Agreement were somehow admissible, Plaintiff cannot prove that the "work" referenced in the 2007 Agreement was the Footage and Plaintiff cannot prove that

Akers allegedly shot the Footage as a "work specially ordered or commissioned" by Muhammad. *Playboy Enterprises, Inc. v. Dumas*, 53 F.3d 549, 558 (2d Cir. 1995).

Additionally, there are genuine issues of material fact because the 2007 Agreement solely defines Muhammad's company as "Client" and Akers as "Photographer/Videographer." (Rosenberg Decl., ¶ 18, Ex. 5 at p. 7). The 2007 Agreement makes reference to the defined term "Owner," which is not defined in the 2007 Agreement. A reasonable interpretation of the 2007 Agreement would not suggest that Muhammad is both the "Client" and the "Owner." Instead, the Executors believe that "Owner" refers to Michael Jackson. At a minimum, the ambiguity creates a genuine issue of material fact as to who the true "Owner" of the Footage was intended to be and whether the one-page 2007 Agreement is even a complete version of the agreement. Because of these genuine issues of material fact, Plaintiff's motion should be denied.

## POINT THREE:  OTHER GENUINE ISSUES OF MATERIAL FACT WARRANT DENIAL OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### G.    There Are Genuine Issues Of Material Fact Regarding The Executors' Counterclaim.

Other disputed material facts preclude summary judgment on the Executors' counterclaim. Plaintiff contends, based on email correspondence attached to the Williams Affirmation, that the Executors knew about the Footage in 2011 and did not assert any claims. (Plaintiff's Memo of Law at 6; Williams Affirmation, Exs. F, G). Williams was not copied on these emails (and therefore cannot authenticate them), and Williams admittedly has no personal knowledge about – and admittedly had no involvement in – the communications between the Executors and Muhammad's attorney during that time period. (Rosenberg Decl. Ex. O [Williams Depo. Tr. at 187:13-188:13]). Thus, Plaintiff's evidence about the alleged knowledge of the Executors about the Footage in 2011 should be excluded. *See* Fed. R. Evid. 602, 801, 802, 901.

The only **_admissible_** communication between the Executors and Muhammad's attorney in 2012 was that Muhammad was only intending to sell the Footage to "private collectors," confirming the Estate's understanding that the Footage could not be publicly and commercially exploited without the Estate's consent. (Langford Decl., ¶ 14, Ex. B). The Executors did not learn that the Footage was being publicly and commercially exploited until May of 2014. (Langford Decl., ¶¶ 10-16, Ex. A). As such, there remains a genuine dispute of material fact regarding Plaintiff's alleged right to publicly and commercially exploit the Footage without the Estate's approval, consent, and/or involvement, thereby precluding Plaintiff's motion for partial summary judgment.

Also, there is a genuine dispute of material fact because, according to the Muhammad Affidavit, Jackson gave Muhammad an _inter vivos_ gift in allegedly allowing Muhammad to shoot the Footage and allegedly permitting Muhammad to "do whatever" he wanted to do with the Footage without any restriction from Jackson. (Muhammad Affidavit, ¶¶ 1-10). Plaintiff concedes – and cannot dispute – that the Footage (and Jackson's image therein) has value given that Plaintiff is attempting to exploit the Film with the Footage, and that the Footage is extremely private (it includes footage of Jackson in his private dressing room). (Langford Decl., ¶ 16).

"[T]o make a valid inter vivos gift there must exist the intent on the part of the donor to make a present transfer; delivery of the gift, either actual or constructive to the donee; and acceptance by the donee." _Gruen v. Gruen_, 68 N.Y.2d 48, 53 (1986). "[T]he proponent of a gift has the burden of proving each of these elements by clear and convincing evidence." _Id. See also Estate of Wooters ex rel. Klein v. Goujjane_, 305 F. Supp. 2d 280, 285 (S.D.N.Y. 2003) (same).

The only evidence offered by Plaintiff that Jackson gifted this private video Footage to Muhammad is the Muhammad Affidavit which, as discussed above, is inadmissible in its entirety

or at least in relevant part. However, even if the Muhammad Affidavit were admissible in its entirety, it is hardly "clear and convincing evidence" that Jackson gifted this Footage (and his privacy) to Muhammad. Muhammad's statements in his affidavit are threadbare at best and offer no explanation whatsoever about Muhammad's relationship with Jackson or why Jackson would expose his privacy and bestow this gift upon Muhammad, an apparent stranger to Jackson. And, there is clearly a dispute of material fact as to whether Jackson intended to allow Muhammad to "do whatever" he wanted with the Footage because Jackson's well-established custom and practice at the time was to control ownership and exploitation of video footage and photographs taken of him in a private setting. (*See* Tavasci Decl., ¶¶ 3-5; Langford Decl., ¶¶ 4-6, 11). Jackson's custom and practice was that such footage was shot either as a work-for-hire for Jackson, or subject to a nondisclosure agreement with Jackson (or both). (Langford Decl., ¶¶ 5, 11). Such footage could not be publicly and commercially exploited without Jackson's prior approval, consent, and/or involvement. (Tavasci Decl., ¶ 4; Langford Decl., ¶¶ 4-5).

Plaintiff simply cannot meet this "clear and convincing evidence" burden at the summary judgment stage with respect to the element of Jackson's "intent" in allegedly gifting his image and privacy in the Footage to Muhammad free and clear of any of Jackson's rights therein. Therefore, Plaintiff's motion for partial summary judgment should be denied.

### H.    There Are Genuine Issues Of Material Fact Regarding The Executors' Affirmative Defenses To Plaintiff's Declaratory Relief Claim.

There are also genuine issues of material fact regarding the Executors' affirmative defenses, including those relating to the photographs shown in the Film. The Executors have affirmative defenses that Plaintiff improperly registered the copyright in the Film and committed fraud on the Copyright Office in registering the Film because it contains photographs (the "Photographs") whose copyrights are owned by companies wholly-owned by the Estate,

Triumph International, Inc. ("Triumph") and Optimum Productions ("Optimum"). (Rosenberg Decl., Ex. F at pp. 13-14 [¶¶ 84-85], pp. 17-22 [¶¶ 8-33]; Langford Decl., ¶ 17, Exs. C, D).

Plaintiff has not presented admissible evidence to dispute that the Photographs are included in the Film, relying on alleged licenses without any testimony from the alleged licensors about the Photographs. (Plaintiff's Memo of Law at 13). *See* Fed. R. Evid. 602, 801, 802, 901. Instead, Plaintiff presents a cursory, one-paragraph "fair use" analysis that focuses solely on the amount of "screen time" occupied by the Photographs. (Plaintiff's Memo of Law at 14). Plaintiff has not presented any analysis of the fair use factors (*see* 17 U.S.C. § 107), and bizarrely claims that Plaintiff's use of the Photographs "might increase demand" for copyrighted work owned by companies owned by the Estate. (Plaintiff's Memo of Law at 14). Plaintiff has demonstrably failed to present sufficient evidence and analysis to prove fair use at the summary judgment stage. *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 608 (2d Cir. 2006) ("[a]lthough the issue of fair use is a mixed question of law and fact, the court may resolve issues of fair use at the summary judgment stage where there are no genuine issues of material fact as to such issues").

//

//

//

//

//

//

//

//

## <u>CONCLUSION</u>

For all the foregoing reasons, the Executors respectfully request that Plaintiff's motion for partial summary judgment be denied in all respects. The Executors further request that their April 28, 2017 motion for summary judgment or, in the alternative, summary adjudication, be granted, and that this Court grant the Executors any such other and further relief as it deems just and proper.


Dated: May 30, 2017                    Respectfully Submitted:

                                       KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP

                                       By:_____/s/ Joshua M. Rosenberg_____
                                           Joshua M. Rosenberg (jrosenberg@kwikalaw.com)
                                            (*pro hac vice*)
                                           808 Wilshire Boulevard, 3rd Floor
                                           Santa Monica, California  90401
                                           Telephone: 310.566.9800
                                           Facsimile: 310.566.9850


                                       BLANK ROME LLP
                                           Jerry D. Bernstein (JB7631) (jbernstein@BlankRome.com)
                                           Rither Alabre (RA9280) (ralabre@BlankRome.com)
                                           The Chrysler Building
                                           405 Lexington Avenue
                                           New York, New York 10174
                                           Telephone: 212.885.5000
                                           Facsimile: 917.332.3766

                                       Attorneys for Defendants and Counterclaimants John Branca
                                       and John McClain, Executors of the Estate of Michael J. Jackson