**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
NOVAL WILLIAMS FILMS LLC     :

                       :   Civil Action No. 14-cv-04711-PAC
                       :   Hon. Paul A. Crotty

       Plaintiff,

                       :   **ECF Case**

    -against-

                       :

JOHN BRANCA and JOHN MCCLAIN,
EXECUTORS OF THE ESTATE OF      :
MICHAEL J. JACKSON

                       :

       Defendants

                       :
---------------------------------------------------------X


**PLAINTIFF'S COUNTER STATEMENT TO**
**THE EXECUTORS' RULE 56.1 STATEMENT**

Michael E. Breslin, Esq. (MB4036)
Attorney for Plaintiff
130 West 57th Street, Suite 1A
New York, NY 10107
Tel: 212.867.0707
Fax: 212.867.0770
mbreslin@fulservgroup.com

By their attorney, Michael E. Breslin, Esq., Plaintiff Noval Williams Films ("Plaintiff")

hereby serves this Counter Statement To The Executors' Rule 56.1 Statement.

| No. | Executors' Alleged Undisputed Material Fact | Executors' Supporting Evidence | Plaintiff's Objections, Responses, and Evidence in Opposition |
|---|---|---|---|
| 1. | On or around May 15, 2014, the Estate learned from public sources that Craig Williams and Lightning Entertainment ("Lightning") were exploiting a film about Michael Jackson which features a "behind the scenes" look of Jackson's photo shoots in 2007 with Vogue and Ebony magazines. | Declaration of Karen Langford dated April 24, 2017 filed in support of the Executors' motion for summary judgment or, in the alternative, summary adjudication ("Langford Decl."), ¶ 10, Ex. H | **Objection:** None<br><br>**Evidence in Opposition:** It is an undisputed fact that Jackson knew in 2007 of the claim to ownership of the Exploited Footage by AMMMG and Muhammad. [Aff HM, ¶¶ 9-10; Aff CJW, ¶¶ 17-18; Aff MW, ¶¶ 5-8].<br><br>Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].<br><br>It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F]. |
| 2. | Michael Jackson's custom and practice had been at all material times to control ownership and exploitation of video footage and photographs taken of him in a private setting. | Declaration of Evvy Tavasci dated September 20, 2016 filed in support of the Executors' motion for | **Objection:** Federal Rules of Evidence ("FRE") 602 – No personal knowledge.<br><br>**Evidence in Opposition:** It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2]. |

| | | summary judgment or, in the alternative, summary adjudication ("Tavasci Decl.") ¶¶ 3-5; Langford Decl,.¶¶ 4-6, 11 | It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].<br><br>It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 3, Ex. 3; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2]. |
| 3. | Michael Jackson's custom and practice was that such footage was shot either as a work-for-hire for Jackson, or subject to a nondisclosure agreement with Jackson (or both). | Langford Decl., ¶¶ 5, 11 | **Objection:**<br>FRE 602 – No personal knowledge; FRE 1002 – Best Evidence Rule – no written agreement(s) produced.<br><br>**Evidence in Opposition:**<br>It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3].<br><br>It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].<br><br>It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did |

| | | | |
|---|---|---|---|
| | | | not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2]. |
| 4. | Based on Jackson's custom and practice, the Estate believed (and continues to believe) that the "behind the scenes" footage in the film "Michael: The Last Photo Shoots" (the "Film") was shot by someone who was hired by Jackson, and that such footage could only be publicly and commercially exploited with his or the Estate's consent. | Langford Decl., ¶¶ 4-6, 11-12 | **Objection:** FRE 602 – No personal knowledge; FRE 1002 – Best Evidence Rule – no written agreement(s) produced. <br><br> **Evidence in Opposition:** It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3]. <br><br> It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2]. <br><br> It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one |

| | | | |
|---|---|---|---|
| | | | at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].<br><br>It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].<br><br>It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].<br><br>It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].<br><br>It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].<br><br>It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10]. |
| 5. | The Estate's belief that Craig Williams and Lightning did not have the right to exploit the footage (the "Footage") in the Film was | Langford Decl., ¶ 12 | **Objection:**<br>FRE 602 – No personal knowledge; FRE 701 – Opinion;<br><br>**Evidence in Opposition:**<br>It is an undisputed fact that Jackson |

| | | | |
|---|---|---|---|
| | bolstered by the timing of the decision to exploit footage that was allegedly created in 2007, yet not publicly and commercially exploited until 2014, five years after Jackson's death in 2009. | | terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3].<br><br>It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4]. |
| 6. | The Estate has a duty to protect its intellectual property and to prevent unauthorized exploitation of images of Michael Jackson. | Langford Decl., ¶ 12 | **Objection:**<br>FRE 701 – Opinion – legal conclusion |
| 7. | On May 20, 2014, the Estate's attorneys sent a letter to Craig Williams and Lightning setting forth the Estate's foregoing contentions and requesting a copy of the Film to further examine the Estate's rights in the Film. | Declaration of Howard Weitzman dated April 28, 2017 filed in support of the Executors' motion for summary judgment or, in the alternative, summary adjudication ("Weitzman Decl."), ¶ 4, Ex. C<br><br>Declaration of Joshua M. Rosenberg dated April 28, 2017 filed in support of the Executors' motion for summary judgment or, in the alternative, | **Objection:**<br>None<br><br>**Evidence in Opposition:**<br>It is an undisputed fact that Jackson knew in 2007 of the claim to ownership of the Exploited Footage by AMMMG and Muhammad. [Aff HM, ¶¶ 9-10; Aff CJW, ¶¶ 17-18; Aff MW, ¶¶ 5-8].<br><br>Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].<br><br>It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of |

| | | summary adjudication ("Rosenberg Decl."), Ex. 15, Ex. **R** (Williams Depo. Tr. at 147:20-148:24), Ex. S (Markovich Depo. Tr. at 161:8-162:5) | ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F]. |
|---|---|---|---|
| 8. | The Estate's first letter, sent to Williams and Lightning on May 20, 2014, was based on the Estate's knowledge from public sources about the Film and on the Estate's knowledge of Jackson's custom and practice regarding video footage capturing his image. | Weitzman Decl., ¶¶ 4, 9, Ex. C; Rosenberg Decl., Ex. 15; Tavasci Decl., ¶¶ 3-5; Langford Decl., ¶¶ 4-6, 10-12 | **Objection:** FRE 602 – No personal knowledge; FRE 1002 – Best Evidence Rule – no written agreement(s) produced. **Evidence in Opposition:** It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3]. It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2]. It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2]. It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony |

| | | | |
|---|---|---|---|
| | | | magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5]. |
| | | | It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6]. |
| | | | It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4]. |
| | | | It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8]. |
| | | | It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7]. |
| | | | It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10]. |
| 9. | On May 28, 2014, Ray Markovich, one of Plaintiff's managers, sent a letter to the Estate | Weitzman Decl., Ex. D;<br><br>Rosenberg Decl., | **Objection:**<br>None<br><br>**Evidence in Response:** |

| | | |
|---|---|---|
| | explaining how Plaintiff obtained the Footage, what the Footage actually contained, and why Plaintiff believed it could exploit the Footage. | Ex. 16, Ex. R (Williams Depo. Tr. at 153:11-25), Ex. S (Markovich Depo. Tr. at 46:6-47:23, 163:5-164:3) | It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3].

It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2].

It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2].

It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].

It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].

It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not |

<table>
<tr><td></td><td></td><td></td><td>

personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].

Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].

It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F].

</td></tr>
<tr><td>10.</td><td>On June 11, 2014, the</td><td>Weitzman Decl.,</td><td><strong>Objection:</strong></td></tr>
</table>

| | | | |
|---|---|---|---|
| | Estate sent a response letter to Markovich and Williams further explaining the Estate's position regarding its rights in the Footage, and again requested a copy of the Film. | ¶ 6, Ex. E; Rosenberg Decl., Ex. 17, Ex. S (Markovich Depo. Tr. at 164:4-165:6) | None<br><br>**Evidence in Response:**<br>It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3].<br><br>It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2].<br><br>It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2].<br><br>It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].<br><br>It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6]. |

|  |  |  |  | It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].

Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].

It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. |

| | | | [Aff BF, ¶ 16, Ex. F]. |
|---|---|---|---|
| 11. | The Estate' s second letter, sent to Plaintiff on June 11, 2014, was informed by further investigation into allegations set forth in Plaintiffs May 28, 2014 letter. | Rosenberg Decl., Exs. 16, 17;<br><br>Langford Decl., ¶¶ 13-15, Ex. I | **Objection:**<br>None<br><br>**Evidence in Response:**<br>It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3].<br><br>It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2].<br><br>It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2].<br><br>It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].<br><br>It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by |

Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].

It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].

Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].

It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to

| | | | |
|---|---|---|---|
| | | | ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F]. |
| 12. | On June 12, 2014, Lightning provided a DVD copy of the Film to the Estate. | Weitzman Decl., ¶ 7 | **Objection:** None |
| 13. | The Estate reviewed the Film and found it indeed contained private footage of Jackson that the Estate believed could not be publicly and commercially exploited without the Estate's consent, including but not limited to sensitive footage of Jackson in his private dressing room. | Langford Decl., ¶ 16 | **Objection:** FRE 602 – No personal knowledge; FRE 701 – Opinion – legal conclusion **Evidence in Opposition:** It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3]. It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2]. It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2]. It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video |

graphed. [Aff HM, ¶ 6; Aff MW, ¶ ¶ 1, 5].

It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].

It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].

Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first

| | | | |
|---|---|---|---|
| | | | published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1]. <br><br> It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F]. |
| 14. | The Estate also believes the Film contains photographs (the "Photographs") in which companies wholly owned by the Estate - Triumph International, Inc. ("Triumph") and Optimum Productions ("Optimum") - own the copyrights. | Langford Decl., ¶ 17, Exs. J, K; <br><br> Rosenberg Decl., Exs. 10-11, Ex. R (Williams Depo. Tr. at 120:17-121:15, 124:11-126:8) | **Objection:** <br> FRE 701 – Opinion – legal conclusion <br> No standing; <br> Statute of Limitations. <br><br> **Evidence in Opposition:** <br> The Plaintiff has valid licenses for all of the Photos that are exploited in the Picture. [Aff BF, ¶ 19, Ex. I]. |
| 15. | To protect the legal rights and economic interests of the Estate in good faith, as the Estate has previously and successfully done in matters involving the unauthorized exploitation of Jackson's image and the Estate's intellectual property, and to fulfill their duties to the Estate and to protect its assets (which was the case for all of their pre-litigation letters at issue here), the Executors sent cease-and-desist letters to Lightning and to Plaintiff on June 17 and 18, 2014, respectively. | Weitzman Decl., ¶¶ 3, 8, 9, Exs. F, G; <br><br> Langford Decl., ¶¶ 2 0-21; <br><br> Rosenberg Decl., Ex. 18, Ex. R (Williams Depo. Tr. at 160:2-18), Ex. S (Markovich Depo. Tr. at 177:9-25). | **Objection:** <br> FRE 602 – No personal knowledge; <br> FRE 701 – Opinion – legal conclusion <br><br> **Evidence in Opposition:** <br> It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3]. <br><br> It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2]. <br><br> It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy |

Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2].

It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].

It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].

It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom

|  |  |  | Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].

Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].

It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F].

It is an undisputed fact that several of the Jackson siblings sent a letter to Defendant John Branca in July 2012 demanding that he and Defendant John McClain (with current attorney of record in this Action, Howard Weitzman, copied) resign as executors and that they claimed essentially fraud and bad faith by these very Executors. [Decl RJM, ¶ 5, Ex. 5].

It is an undisputed fact that the Executors are currently involved in litigation with the Internal Revenue Service ("IRS") and such litigation commenced on July 26, 2013. [Decl RJM, ¶ 6, Ex. 6].

It is an undisputed fact that an attorney |

| | | | |
|---|---|---|---|
| | | | for the Executors, Avram Salkin, made a judicial admission on February 6, 2017 that Jackson's name and likeness rights were only worth $3,000,000 at the time of his death in 2009. [Decl RJM, ¶ 7, Ex. 7]. It is an undisputed fact that the IRS, in stark contrast, claimed Jackson's name and likeness rights to be worth $161,000,000 at the time of his death. [Decl RJM, ¶ 7, Ex. 7].<br><br>It is an undisputed fact that the Picture, which shows a healthy, happy and beloved Jackson in 2007 could seriously hurt the Executors' in their litigation with the IRS. [Decl RJM, ¶ 8, Ex. 5].<br><br>It is an undisputed fact that when there is such a substantial difference in valuation of Jackson's name and likeness rights in 2009 of $161,000,000 by the IRS versus $3,000,000 by the Executors, somebody must be lying. [Decl RJM, ¶ 8, Ex. 7]. |
| 16. | The Estate's final letters were cease-and- desist letters sent to Plaintiff and Lightning on June 17 and 18, 2014, which mirror the Executors' counterclaim and affirmative defenses in this case regarding the Photographs and the Footage. | *Compare* Weitzman Decl., Exs. F, G *with* Rosenberg Decl., Ex. M at pp. 13- 14 (¶¶ 84-85), pp. 17-22 (¶¶ 8-33) | **Objection:**<br>FRE 602 – No personal knowledge as to what is asserted in the letters;<br>FRE 701 – Opinion – legal conclusion<br><br>**Evidence in Opposition:**<br>It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3].<br><br>It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2].<br><br>It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval |

rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2].

It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].

It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].

It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad

could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].

Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].

It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F].

It is an undisputed fact that several of the Jackson siblings sent a letter to Defendant John Branca in July 2012 demanding that he and Defendant John McClain (with current attorney of record in this Action, Howard Weitzman, copied) resign as executors and that they claimed essentially fraud and bad faith by these very Executors. [Decl RJM, ¶ 5, Ex. 5].

It is an undisputed fact that the Executors are currently involved in litigation with the Internal Revenue Service ("IRS"). [Decl RJM, ¶ 6, Ex.

| | | | |
|---|---|---|---|
| | | | 6].

It is an undisputed fact that an attorney for the Executors, Avram Salkin, made a judicial admission on February 6, 2017 that Jackson's name and likeness rights were only worth $3,000,000 at the time of his death in 2009. [Decl RJM, ¶ 7, Ex. 7]. It is an undisputed fact that the IRS, in stark contrast, claimed Jackson's name and likeness rights to be worth $161,000,000 at the time of his death. [Decl RJM, ¶ 7, Ex. 7].

It is an undisputed fact that the Picture, which shows a healthy, happy and beloved Jackson in 2007 could seriously hurt the Executors' in their litigation with the IRS. [Decl RJM, ¶ 9, Ex. 7].

It is an undisputed fact that when there is such a substantial difference in valuation of Jackson's name and likeness rights in 2009 of $161,000,000 by the IRS versus $3,000,000 by the Executors, somebody must be lying. [Decl RJM, ¶ 8, Ex. 7].

The Plaintiff has valid licenses for all of the Photos that are exploited in the Picture. [Aff BF, ¶ 19, Ex. I]. |
| 17. | All of the letters sent by the Executors were sent in good faith to fulfill their duties as Executors of the Estate and to protect the assets of the Estate. | Langford Decl., ¶¶ 20-21;

Weitzman Decl., ¶¶ 3 , 9 | **Objection:**
FRE 602 – No personal knowledge as to what is asserted in the letters;
FRE 701 – Opinion – legal conclusion

**Evidence in Opposition:**
It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3]. |

It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2].

It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2].

It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].

It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].

It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an

employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].

Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].

It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F].

It is an undisputed fact that several of the Jackson siblings sent a letter to Defendant John Branca in July 2012 demanding that he and Defendant John McClain (with current attorney of record in this Action, Howard Weitzman, copied) resign as executors

and that they claimed essentially fraud and bad faith by these very Executors. [Decl RJM, ¶ 5, Ex. 5].

It is an undisputed fact that the Executors are currently involved in litigation with the Internal Revenue Service ("IRS") and such litigation commenced on July 26, 2013. [Decl RJM, ¶ 6, Ex. 6].

It is an undisputed fact that an attorney for the Executors, Avram Salkin, made a judicial admission on February 6, 2017 that Jackson's name and likeness rights were only worth $3,000,000 at the time of his death in 2009. [Decl RJM, ¶ 7, Ex. 7]. It is an undisputed fact that the IRS, in stark contrast, claimed Jackson's name and likeness rights to be worth $161,000,000 at the time of his death. [Decl RJM, ¶ 7, Ex. 7].

It is an undisputed fact that the Picture, which shows a healthy, happy and beloved Jackson in 2007 could seriously hurt the Executors' in their litigation with the IRS. [Decl RJM, ¶ 9, Ex. 7].

It is an undisputed fact that when there is such a substantial difference in valuation of Jackson's name and likeness rights in 2009 of $161,000,000 by the IRS versus $3,000,000 by the Executors, somebody must be lying. [Decl RJM, ¶ 8, Ex. 7].

The Plaintiff has valid licenses for all of the Photos that are exploited in the Picture. [Aff BF, ¶ 19, Ex. I].

| 18. | The Estate has routinely enforced its rights against unauthorized uses of Michael | Langford Decl., ¶¶ 20-21; Weitzman Decl., | **Objection:** FRE 602 – No personal knowledge as concerns the Picture or the Exploited Footage; |

| | Jackson's name, likeness, images, and intellectual property, and against any violations of agreements regarding the same. | ¶¶ 3, 9 | FRE 701 – Opinion – legal conclusion; FRE 1002 – Best Evidence Rule – no written agreement(s) produced.

**Evidence in Opposition:**
It is an undisputed fact that Jackson terminated Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003. [Decl RJM, ¶ 3, Ex. 3].

It is an undisputed fact that Jackson terminated Evvy Tavasci sometime in 2005. [Decl RJM, ¶ 2, Ex. 2].

It is an undisputed fact that Jackson sometimes allowed people to shoot footage of Jackson where Jackson did not own the rights or have approval rights even before the termination of Ziffren Brittenham LLP, John Branca, John McClain and Karen Langford in 2003 and the termination of Evvy Tavasci sometime in 2005 as evidenced by the testimony of Evvy Tavasci concerning the documentary shot by Mr. Bashir in 2002 in which Mr. Bashir owned all rights. [Decl RJM, ¶ 4, Ex. 4; Decl CJW, ¶ 1; *See also* Sealed Document 96, p. 43:1-44:2].

It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].

It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by |

| | | | | Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].
It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].
It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].
It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].
It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].
Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].
It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to |

ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F].

It is an undisputed fact that several of the Jackson siblings sent a letter to Defendant John Branca in July 2012 demanding that he and Defendant John McClain (with current attorney of record in this Action, Howard Weitzman, copied) resign as executors and that they claimed essentially fraud and bad faith by these very Executors. [Decl RJM, ¶ 5, Ex. 5].

It is an undisputed fact that the Executors are currently involved in litigation with the Internal Revenue Service ("IRS") and such litigation commenced on July 26, 2013. [Decl RJM, ¶ 6, Ex. 6].

It is an undisputed fact that an attorney for the Executors, Avram Salkin, made a judicial admission on February 6, 2017 that Jackson's name and likeness rights were only worth $3,000,000 at the time of his death in 2009. [Decl RJM, ¶ 7, Ex. 7]. It is an undisputed fact that the IRS, in stark contrast, claimed Jackson's name and likeness rights to be worth $161,000,000 at the time of his death. [Decl RJM, ¶ 7, Ex. 7].

It is an undisputed fact that the Picture, which shows a healthy, happy and beloved Jackson in 2007 could seriously hurt the Executors' in their litigation with the IRS. [Decl RJM, ¶ 9, Ex. 7].

It is an undisputed fact that when there is such a substantial difference in valuation of Jackson's name and likeness rights in 2009 of $161,000,000 by the IRS versus

| | | | |
|---|---|---|---|
| | | | $3,000,000 by the Executors, somebody must be lying. [Decl RJM, ¶ 8, Ex. 7].<br><br>The Plaintiff has valid licenses for all of the Photos that are exploited in the Picture. [Aff BF, ¶ 19, Ex. I]. |
| 19. | In sending their letters in May and June of 2014 to Plaintiff and Lightning, the Executors and their attorneys relied on California Civil Code section 47. | Weitzman Decl., ¶ 9 | **Objection:**<br>FRE 403 – Unfair prejudice |
| 20. | The Executors are domiciled in California, the Estate is being administered in California, the Executors' letters were sent by California counsel, and Lightning (the third party whose contract with Plaintiff was allegedly interfered with) is based in California and received the letters in California. | Langford Decl., ¶¶ 7-8;<br><br>Weitzman Decl., Exs. C, E, F, G;<br><br>Rosenberg Decl., Exs. P, 12, 1 5, 17, 18) | **Objection:**<br>None. |
| 21. | All of Plaintiff's members and managers reside in California, and Plaintiff has admitted that its ***only*** connection to New York is that it is registered as an LLC in New York. | Rosenberg Decl., Ex. R (Williams Depo. Tr. at 103:6-17, 103:25-104:16, 118:3-19) | **Objection:**<br>None.<br><br>**Evidence in Opposition:**<br>It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].<br><br>It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by |

| | | | Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6]. |
|---|---|---|---|
| 22. | Effective as of February 10, 2014, Plaintiff entered into a Sales Agency Agreement with Lightning whereby Lightning agreed to act as Plaintiff's Agent in exploiting the Film. | Rosenberg Decl., Ex. 12, Ex. S (Markovich Depo. Tr. at 83:23-87:10) | **Objection:** None. |
| 23. | The Sales Agency Agreement required that Plaintiff deliver certain essential items for the Film to Lightning by April 15, 2014, with a 30-day cure period for failure to deliver. | Rosenberg Decl., Ex. 12 at § 4.1, 4.2, Agreement Exhibit A (NWF000182, 194-195) | **Objection:** None.<br><br>**Evidence in Opposition:** § 4.1 and 4.2 have no termination clause. Rosenberg Decl., Ex. 12 at § 4.1, 4.2, Agreement Exhibit A (NWF000182, 194-195). |
| 24. | On May 27, 2014, Lightning sent a letter to Plaintiff that put Plaintiff on notice that it was in breach of Paragraph 4.1 of the Sales Agency Agreement regarding Plaintiff's delivery of items for the Film to Lightning. | Declaration of AnaLisa Valle dated October 12, 2016 filed in support of the Executors' motion for summary judgment or, in the alternative, summary adjudication ("Valle Decl."), ¶ 2, Ex. A at p. 2 (NWF000542);<br><br>Rosenberg Decl., Ex. 13, Ex. S [Markovich Depo. Tr. at 91:21-92:14, 94:10-20]) | **Objection:** None.<br><br>**Evidence in Opposition:** The reason for the notice was the May 19, 2014 letter from the Executors and not deliverables and § 9.1 of the Agreement required Plaintiff to defend its rights against the Executors. [Decl RJM, ¶ 10; Valle Decl., Ex. A at p. 1 (NWF000541); Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. |
| 25. | The second page of Lightning's May 27, 2014 letter lists the specific items that Lightning claimed Plaintiff had failed to deliver for the Film, and Lightning demanded | Valle Decl., Ex. A at 2 (NWF000542);<br><br>Rosenberg Decl., Ex. 13 at 2 | **Objection:** None.<br><br>**Evidence in Opposition:** The reason for the notice was the May 19, 2014 letter from the Executors and not deliverables and § 9.1 of the Agreement required Plaintiff to defend |

| | | |
|---|---|---|
| | that Plaintiff cure its breach within 30 days. | | its rights against the Executors. [Decl RJM, ¶ 10; Valle Decl., Ex. A at p. 1 (NWF000541); Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. |
| 26. | By June 26, 2014, Plaintiff did not deliver all of the items to Lightning listed on page 2 of Lightning's May 27, 2014 letter, nor did Plaintiff receive any acknowledgement from Lightning that the breach had been cured and all items had been delivered. | Rosenberg Decl., Ex. S (Markovich Depo. Tr. At 101:10-23, 146:10-21) | **Objection:** None.<br><br>**Evidence in Opposition:** Plaintiff's Complaint in this Action was filed on June 25, 2014 and Plaintiff had delivered all items to the Sales Agent by June 26, 2014 with the exception of an Errors and Omissions Insurance Certificate which was impossible to obtain because of the Executors' tortious letters and Form 6166 which takes quite some time to obtain from the IRS. [Decl RJM, ¶ 11; Dkt. 1]. |
| 27. | On June 26, 2014, Lightning sent a notice of termination to Plaintiff due to Plaintiff's failure to cure the delivery defects listed on page 2 of Lightning's May 27, 2014 letter. | Valle Decl., ¶ 3, Ex. B;<br><br>Rosenberg Decl., Ex. 14, Ex. S (Markovich Depo Tr. At 99:5-100:8) | **Objection:** None.<br><br>**Evidence in Opposition:** Plaintiff's Complaint in this Action was filed on June 25, 2014 and Plaintiff had delivered all items to the Sales Agent by June 26, 2014 with the exception of an Errors and Omissions Insurance Certificate which was impossible to obtain because of the Executors' tortious letters and Form 6166 which takes quite some time to obtain from the IRS. [Decl RJM, ¶ 11; Dkt. 1].<br><br>The notice of termination was because Plaintiff had filed suit against the Executors to protect its rights as required under the Agreement. [Decl RJM, ¶ 12; Valle Decl., Ex. A at p. 1 (NWF000541) Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. |
| 28. | There is no mention of the Estate in Lightning's June 26, 2014 letter to Plaintiff, nor is there any mention in the letter that Lightning was | Valle Decl., ¶ 3, Ex. B<br><br>Rosenberg Decl., Ex. 14 | **Objection:** None.<br><br>**Evidence in Opposition:** Plaintiff's Complaint in this Action was filed on June 25, 2014 and |

|  |  |  |  |
|---|---|---|---|
|  | terminating the Sales Agency Agreement due to any acts of the Estate. |  | Plaintiff had delivered all items to the Sales Agent by June 26, 2014 with the exception of an Errors and Omissions Insurance Certificate which was impossible to obtain because of the Executors' tortious letters and Form 6166 which takes quite some time to obtain from the IRS. [Decl RJM, ¶ 11; Dkt. 1].<br><br>The notice of termination was because Plaintiff had filed suit against the Executors to protect its rights as required under the Agreement. [Decl RJM, ¶ 12; Valle Decl., Ex. A at p. 1 (NWF000541); Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. |
| 29. | Lightning's only stated reason for its termination of the Sales Agency Agreement in Lightning's June 26, 2014 letter was Plaintiff's "failure to cure the *delivery defects* noted in our letter dated May 27, 2014." | Valle Decl., ¶ 3, Ex. B<br><br>Rosenberg Decl., Ex. 14 | **Objection:**<br>None.<br><br>**Evidence in Opposition:**<br>Plaintiff's Complaint in this Action was filed on June 25, 2014 and Plaintiff had delivered all items to the Sales Agent by June 26, 2014 with the exception of an Errors and Omissions Insurance Certificate which was impossible to obtain because of the Executors' tortious letters and Form 6166 which takes quite some time to obtain from the IRS. [Decl RJM, ¶ 11; Dkt. 1].<br><br>The notice of termination was because Plaintiff had filed suit against the Executors to protect its rights as required under the Agreement. [Decl RJM, ¶ 12; Valle Decl., Ex. A at p. 1 (NWF000541); Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. |
| 30. | Lightning terminated the Sales Agency Agreement for reasons independent of any actions by the Executors. | Valle Decl., ¶ 3, Ex. B<br><br>Rosenberg Decl., Ex. 14 | **Objection:**<br>FRE 701 – Opinion – legal<br><br>**Evidence in Opposition:**<br>Plaintiff's Complaint in this Action was filed on June 25, 2014 and Plaintiff had delivered all items to the Sales Agent by June 26, 2014 with the |

| | | | |
|---|---|---|---|
| | | | exception of an Errors and Omissions Insurance Certificate which was impossible to obtain because of the Executors' tortious letters and Form 6166 which takes quite some time to obtain from the IRS. [Decl RJM, ¶ 11; Dkt. 1].<br><br>The notice of termination was because Plaintiff had filed suit against the Executors to protect its rights as required under the Agreement. [Decl RJM, ¶ 12; Valle Decl., Ex. A at p. 1 (NWF000541); Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. |
| 31. | H. Hasaun Muhammad ("Muhammad") has not been deposed in this case and Plaintiff has not produced any declarations or affidavits from Muhammad. | Rosenberg Decl., ¶ 13 | **Objection:**<br>None.<br><br>**Evidence in Opposition:**<br>Plaintiff produced a sworn Affidavit from Muhammad. [Dkt.113]. |
| 32. | The only document that Plaintiff relies on to assert that Muhammad was the initial owner of the Footage and could exploit it without Jackson's consent is a one page, purported "Video/Photographic Work-For-Hire Agreement" dated September 24, 2007 (the "2007 Agreement") that is attached as an exhibit to the 2013 Content Acquisition Agreement wherein Muhammad allegedly transferred the Footage to Williams. | Rosenberg Decl., ¶ 14, Ex. 51 at p. 7, Ex. R (Williams Depo. Tr. at 35:6-11, 36:6-14, 45:3-46:5, 87:8-95:22, 97:4-10, 112:21-113:9); Ex. L at ¶ 44 | **Objection:**<br>None.<br><br>**Evidence in Opposition:**<br>Plaintiff produced a sworn Affidavit from Muhammad. [Aff HM; Dkt.113].<br><br>It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].<br><br>It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].<br><br>It is an undisputed fact that John |

| | | | | Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4]. |
| | | | | It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8]. |
| | | | | It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7]. |
| | | | | It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10]. |
| | | | | Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1]. |
| | | | | It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F]. |

| | | | |
|---|---|---|---|
| 33. | The two purported signatories to the 2007 Agreement are Muhammad and Matthew Akers. | Rosenberg Decl., ¶ 14, Ex. 5 at p. 7 | **Objection:** None. <br><br> **Evidence in Opposition:** <br><br> Ambassadors Media, Marketing & Management Group, LLC is referred to in the Agreement as both the Client and the Owner. [Aff HM, ¶ 2; Dkt. 113, ¶ 2]. <br><br> The Client is the Owner and there is no other Owner. [Aff HM, ¶ 3; Dkt. 113, ¶ 3]. <br><br> The signatures on the Agreement are Muhammad's, representing the Client/Owner, and Matthew Akers and both signatures are authentic. [Aff HM, ¶ 4; Dkt. 113, ¶ 4]. |
| 34. | Craig J. Williams and Raymond J. Markovich - who are both " managers " of Plaintiff and its authorized agents - were offered by Plaintiff as its FRCP 30(b)(6) designees, and both admittedly cannot authenticate Muhammad's or Akers' purported signatures on the 2007 Agreement. | Rosenberg Decl., Ex. R (Williams Depo. Tr. at 11:14-23, 49:15-17, 87:8-95:22, 103:6-17, 103:25-104:2), Ex. S (Markovich Depo. Tr. at 9:5-11:19, 22:1-18, 69:23-70:8, 76:22-77:18) | **Objection:** Relevance <br><br> **Evidence in Opposition:** Ambassadors Media, Marketing & Management Group, LLC is referred to in the Agreement as both the Client and the Owner. [Aff HM, ¶ 2; Dkt. 113, ¶ 2]. <br><br> The Client is the Owner and there is no other Owner. [Aff HM, ¶ 3; Dkt. 113, ¶ 3]. <br><br> The signatures on the Agreement are Muhammad's, representing the Client/Owner, and Matthew Akers and both signatures are authentic. [Aff HM, ¶ 4; Dkt. 113, ¶ 4]. |
| 35. | The 2007 Agreement makes no reference whatsoever to the "work" being commissioned. | Rosenberg Decl., ¶ 14, Ex. 5 at p. 7 | **Objection:** Relevance <br><br> **Evidence in Opposition:** It is an undisputed fact that in 2007, the two photo shoots (one for Vogue |

magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].

It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].

It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on Muhammad's right to exploit the Footage. [Aff HM, ¶ 10].

| 36. | There is no mention of Michael Jackson in the | Rosenberg Decl., ¶ 14, Ex. 5 at p. 7 | **Objection:** None. |
|---|---|---|---|

| | 2007 Agreement nor the photo shoots that are the subject of the Footage. | | **Evidence in Opposition:** Michael Jackson and each of the Shoots are identified on the description of the tapes on Exhibit A. [Rosenberg Decl., Ex. 8 at p. 5]. |
|---|---|---|---|
| 37. | Muhammad and his company, Ambassadors Media, Marketing & Management Group LLC, are defined in the 2007 Agreement as "Client"; Matthew Akers is defined in that agreement as " Photographer/ Videographer"; and the 2007 Agreement states that "[t]he undersigned parties agreement that all rights, copyrights, titles, and interest in any photographs or video footage taken by photographer/ videographer, on behalf of Client belong solely and exclusively to the **Owner** free from any claims whatsoever by the Photographer/ Videographer." | Rosenberg Decl., ¶ 14, Ex. 5 at p. 7 (emphasis added) | **Objection:** None.<br><br>**Evidence in Opposition:** Ambassadors Media, Marketing & Management Group, LLC is referred to in the Agreement as both the Client and the Owner. [Aff HM, ¶ 2; Dkt. 113, ¶ 2].<br><br>The Client is the Owner and there is no other Owner. [Aff HM, ¶ 3; Dkt. 113, ¶ 3].<br><br>The signatures on the Agreement are Muhammad's, representing the Client/Owner, and Matthew Akers and both signatures are authentic. [Aff HM, ¶ 4; Dkt. 113, ¶ 4]. |
| 38. | Williams and Markovich admittedly have no personal knowledge regarding the circumstances surrounding the creation, negotiation, and execution of the 2007 Agreement and the underlying Footage. | Rosenberg Decl. Ex. R (Williams Depo. Tr. at 44:3-25, 57:5-17, 87:8-93:1, 182:11-185:17), Ex. S (Markovich Depo. Tr. at 9:20-10:10, 76:22-77:18, 217:1-220:2) | **Objection:** Relevance<br><br>**Evidence in Opposition:** Ambassadors Media, Marketing & Management Group, LLC is referred to in the Agreement as both the Client and the Owner. [Aff HM, ¶ 2; Dkt. 113, ¶ 2].<br><br>The Client is the Owner and there is no other Owner. [Aff HM, ¶ 3; Dkt. 113, ¶ 3].<br><br>The signatures on the Agreement are Muhammad's, representing the |

Client/Owner, and Matthew Akers and both signatures are authentic. [Aff HM, ¶ 4; Dkt. 113, ¶ 4].

It is an undisputed fact that in 2007, the two photo shoots (one for Vogue magazine and one for Ebony magazine) ("Shoots") took place in New York, New York, including one at the Brooklyn Museum and Jackson consented to be photographed/video graphed. [Aff HM, ¶ 6; Aff MW, ¶¶ 1, 5].

It is an undisputed fact that Muhammad and Michael Williams ("M. Williams") personally witnessed Jackson and the Shoots being photographed/video graphed by Muhammad's Videographer. [Aff HM, ¶ 7; Aff MW, ¶ 6].

It is an undisputed fact that John Branca, John McClain, Karen Langford and Evvy Tavasci were not personally present at the Shoots and had nothing to do with the Shoots. [Aff MW, ¶ 4].

It is an undisputed fact that at the time of the Shoots, Muhammad was not an employee of Jackson, Muhammad had no work-for-hire agreement with Jackson and Muhammad was not paid by Jackson. [Aff HM, ¶ 8].

It is an undisputed fact that Jackson consented to be photographed/video graphed and stated that Muhammad could do whatever Muhammad wanted with the photographs and video footage photographed and taken by Muhammad's Videographer whom Muhammad had paid ("Footage"). [Aff HM, ¶ 9; Aff MW, ¶¶ 5, 7].

It is an undisputed fact that there were no limitations placed by Jackson on

| | | | Muhammad's right to exploit the Footage. [Aff HM, ¶ 10]. |
|---|---|---|---|
| 39. | On August 15, 2014, Craig Williams' company Bonaventura Films registered the copyright in the Footage. | Rosenberg Decl., Ex. 34, Ex. S (Markovich Depo. Tr. at 186:20- **188:21**) | **Objection:** None. |
| 40. | The August 15, 2014 copyright registration of the Footage was the first time the copyright in the Footage had been registered. | Rosenberg Decl., Ex. 34, Ex. S (Markovich Depo. Tr. at 184:14-25, 186:10-188:21); Rosenberg Decl., ¶ 28 | **Objection:** None. |
| 41. | Plaintiff has admitted that first publication of the footage occurred sometime in 2007, more than five years prior to the first registration of the copyright in the Footage. | Rosenberg Decl., Ex. L at ¶ 17, Ex. 22 at p. 8 (Interrogatory No. 8), Ex. Q (NWF000158-161), Ex. R (Williams Depo. Tr. at 182:11-183:7) | **Objection:** None.<br><br>**Evidence in Opposition:** Plaintiff alleged that Muhammad released a small amount of the Footage commercially on or about November 2007 [Amended Complaint, Dkt. 21, ¶ 17] and it is an undisputed fact that Jackson was fully aware and knew that the Exploited Footage and Footage was first published and exploited in 2007. [Decl. MW, ¶ 8; Decl RJM, ¶ 1, Ex. 1].<br><br>It is an undisputed fact that the Executors, through their agent Karen Langford, knew in 2011 of AMMMG's/Muhammad's claim to ownership of the Exploited Footage but the Executors made no claim of ownership in the Exploited Footage. [Aff BF, ¶ 16, Ex. F]. |
| 42. | Plaintiffs Amended Complaint (the " Complaint") does not plead any claim for tortious interference. | Rosenberg Decl., Ex. L | **Objection:** 28 U.S.C. § 2202 does not require as explained in Plaintiff's memorandum.<br><br>**Evidence in Opposition:** Elements of tortious interference pled: |

1.Valid Agreement with Lightning. [Rosenberg Decl., Ex. 12; Complaint at Dkt. 21 ¶ 47].

2. On May 19, 2014, Defendants, through their attorney Mr. Howard Weitzman, sent Lightning and Mr. Craig Williams a letter claiming (without providing any proof of anything) that they may have rights in certain footage and photographs used in the Picture. The Defendants further demanded the right to view the Picture. [Complaint at Dkt. 21 ¶ 48].

3. Plaintiff's Complaint in this Action was filed on June 25, 2014 and Plaintiff had delivered all items to the Sales Agent by June 26, 2014 with the exception of an Errors and Omissions Insurance Certificate which was impossible to obtain because of the Executors' tortious letters and Form 6166 which takes quite some time to obtain from the IRS. [Decl RJM, ¶ 11; Dkt. 1].

The notice of termination was because Plaintiff had filed suit against the Executors to protect its rights as required under the Agreement. [Decl RJM, ¶ 12; Valle Decl., Ex. A at p. 1 (NWF000541); Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. [Complaint at Dkt. 21 ¶ 49].

4. The Executors' interference was intentional and as they threatened to bring suit against Plaintiff. [Complaint at Dkt. 21 ¶ 53].

5. The Executors' interference caused the Plaintiff to suffer damages. [Complaint at Dkt. 21 ¶ 69].

| | | | |
|---|---|---|---|
| 43. | In discovery, Plaintiff stated that the "further relief" it seeks under Section 2202 is damages for alleged tortious interference by the Executors. | Rosenberg Decl., Ex. 20 at ¶¶ 2, 7, Ex.23 at pp. 3-9, Ex. R (Williams Depo. Tr. at 166:17-167:22, 185:18-186:19), Ex. S (Markovich Depo. Tr. at 116:6- 117:7, 118:4-10) | **Objection:** 28 U.S.C. § 2202 does not require as explained in Plaintiff's memorandum. <br><br> **Evidence in Opposition:** Elements of tortious interference pled: <br><br> 1.Valid Agreement with Lightning. [Rosenberg Decl., Ex. 12; Complaint at Dkt. 21 ¶ 47]. <br><br> 2. On May 19, 2014, Defendants, through their attorney Mr. Howard Weitzman, sent Lightning and Mr. Craig Williams a letter claiming (without providing any proof of anything) that they may have rights in certain footage and photographs used in the Picture. The Defendants further demanded the right to view the Picture. [Complaint at Dkt. 21 ¶ 48]. <br><br> 3. Plaintiff's Complaint in this Action was filed on June 25, 2014 and Plaintiff had delivered all items to the Sales Agent by June 26, 2014 with the exception of an Errors and Omissions Insurance Certificate which was impossible to obtain because of the Executors' tortious letters and Form 6166 which takes quite some time to obtain from the IRS. [Decl RJM, ¶ 11; Dkt. 1]. <br><br> The notice of termination was because Plaintiff had filed suit against the Executors to protect its rights as required under the Agreement. [Decl RJM, ¶ 12; Valle Decl., Ex. A at p. 1 (NWF000541); Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. [Complaint at Dkt. 21 ¶ 49]. |

| | | | 4. The Executors' interference was intentional and as they threatened to bring suit against Plaintiff. [Complaint at Dkt. 21 ¶ 53].<br><br>5. The Executors' interference caused the Plaintiff to suffer damages. [Complaint at Dkt. 21 ¶ 69]. |
|---|---|---|---|
| 44. | Plaintiff admits that the only acts of the Executors for which Plaintiff seeks damages in this case are the letters sent by the Executors to Plaintiff and Lightning in May and June of 2014. | Rosenberg Decl. Ex. S (Markovich Depo. Tr. at 159:20-25) | **Objection:** None. |
| 45. | Plaintiff claimed in discovery that the Executors' letters caused Lightning to terminate its Sales Agency Agreement with Plaintiff. | Rosenberg Decl., Ex. 20 at ¶¶ 2, 7, Ex. 23 at pp. 3-9, Ex. R (Williams Depo. Tr. at 166:17-167:22, 185:18-186:19), Ex. S (Markovich Depo. Tr. at 116:6- 117:7) | **Objection:** None.<br><br>**Evidence in Opposition:** The Executors' caused Lightning to breach § 9.1 of the Agreement. [Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)].<br><br>Plaintiff's Complaint in this Action was filed on June 25, 2014 and Plaintiff had delivered all items to the Sales Agent by June 26, 2014 with the exception of an Errors and Omissions Insurance Certificate which was impossible to obtain because of the Executors' tortious letters and Form 6166 which takes quite some time to obtain from the IRS. [Decl RJM, ¶ 11; Dkt. 1].<br><br>The notice of termination was because Plaintiff had filed suit against the Executors to protect its rights as required under the Agreement. [Decl RJM, ¶ 12; Valle Decl., Ex. A at p. 1 (NWF000541); Rosenberg Decl., Ex. 12 at § 9.1 (NWF000189-190)]. |
| 46. | The Executors' First | Rosenberg Decl., | **Objection:** |

| | | |
|---|---|---|
| | Amended Answer To Plaintiffs First Amended Complaint And The Executors' First Amended Counterclaims Against Plaintiff assert a counterclaim based on Plaintiffs use of the Footage. | Ex. M at pp. 17-22 (¶¶ 8-33) | None.<br><br>**Evidence in Opposition:**<br>But the Executors' failed to plead any claims against the Picture and are now outside of the statute of limitations so Plaintiff can freely exploit the Picture. Dkt. 50, ¶ 33. |
| 47. | The Executors' First Amended Answer To Plaintiffs First Amended Complaint And The Executors' First Amended Counterclaims Against Plaintiff assert denials and affirmative defenses based on Plaintiffs use of the Photographs. | Rosenberg Decl., Ex. M at pp. 10, 13-14 (¶¶ 64-65, 67, 84-85) | **Objection:**<br>No standing;<br>Outside the statute of limitations.<br><br>**Evidence in Opposition:**<br>The Plaintiff has valid licenses for all of the Photos that are exploited in the Picture. [Aff BF, ¶ 19, Ex. I]. |
| 48. | This Court denied Plaintiffs FRCP 12(b)(6) motion to dismiss the Executors' counterclaim and the Executors' Seventh and Eighth Affirmative Defenses (Improper Registration and Fraud in Registration). | Rosenberg Decl., ¶ 7, Ex. O [Dkt. #65] | **Objection:**<br>No standing;<br>Outside the statute of limitations;<br>No private right of action.<br><br>**Evidence in Opposition:**<br>The Plaintiff has valid licenses for all of the Photos that are exploited in the Picture. [Aff BF, ¶ 19, Ex. I]. |

Dated: New York, New York                    Respectfully submitted,
       May 30, 2017


                                      /s/ Michael E. Breslin
                                      Michael E. Breslin, Esq. (MB4036)
                                      Attorney for Plaintiff
                                      130 West 57th Street, Suite 1A
                                      New York, NY 10107
                                      Tel: 212.867.0707
                                      Fax: 212.867.0770
                                      mbreslin@fulservgroup.com